32 A.3d 697

**COMMONWEALTH of Pennsylvania, Appellant**

**v.**

**Raymond E. HAUN, Appellee.**

Supreme Court of Pennsylvania.

Submitted May 4, 2011.

Decided Nov. 30, 2011.

98

Nathan Lee Boob, Centre County District Attorney's Office, Elizabeth Ann Hunt, State College, Stacy Parks Miller, Centre County District Attorney's Office, for Commonwealth of Pennsylvania.

David R. Crowley, Bellefonte, for Raymond E. Haun.

Jules Epstein, Kairys, Rudovsky, Messing & Feinberg, Philadelphia, Peter David Goldberger, Law Office of Peter Goldberger, Ardmore, Thomas M. Place, for Appellee Amicus Curiae, PA Association of Criminal Defense Lawyers.

BEFORE: CASTILLE, C.J., SAYLOR, EAKIN, BAER, TODD, McCAFFERY, ORIE MELVIN, JJ.

*OPINION*

Justice SAYLOR.

The question presented is whether a concession of guilt, *per se,* forecloses prisoner access to review under the Post Conviction Relief Act. In effect, the Commonwealth asks that we revisit the rationale from our opinion in *Commonwealth v. Lantzy,* 558 Pa. 214, 736 A.2d 564 (1999) (*"Lantzy II "*), and adopt the reasoning from the Superior Court decision which it reversed. *See Commonwealth v. Lantzy,* 712 A.2d 288 (Pa.Super.1998) (*en banc* ) (*"Lantzy I "*), *rev'd, Lantzy II,* 558 Pa. at 214, 736 A.2d at 564.

## I. Background

### A. Key Statutory and Decisional Law

As noted, this case concerns the construction of Post Conviction Relief Act, 42 Pa.C.S. §§ 9541–9546, or the PCRA, as it relates to claims of deficient attorney stewardship impacting a defendant's trial and/or appellate rights. There are many good sources of general background information. *See, e.g.,* THOMAS M. PLACE, THE POST CONVICTION RELIEF ACT, PRACTICE AND PROCEDURE (PBI Press 2003).

As relevant to the present controversy, the PCRA reflects the General Assembly's core focus on providing a framework for collateral judicial review of innocence-related and legality-of-sentence claims. This is manifested in the opening sentence of Section 9542 of the PCRA, or its "Scope of subchapter" provision. 42 Pa.C.S. § 9542 ("This subchapter provides for an action by which persons convicted of crimes they did not commit and persons serving illegal sentences may obtain collateral relief."). As it pertains more specifically to attorney ineffectiveness, the Legislature's concern with safeguarding the innocent can be gleaned from the prejudice requirement reposited within Section 9543—entitled "Eligibility for relief"—which sets forth the material requirements for redress. *Id.* § 9543(a)(2)(ii) (conditioning the availability of statutory post-conviction relief on proof that ineffectiveness "so under-

mined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place").

The main issue in the *Lantzy* line of decisions was whether Section 9543(a)(2)(ii)'s prejudice element universally required PCRA petitioners specifically to establish unreliability in the truth-determining process in guilt adjudication as a threshold to relief. *See Lantzy I,* 712 A.2d at 289, 291. This question was significant, because deficient attorney stewardship may impair a defendant's rights in ways that might not seem, at least facially, to implicate this guilt-or-innocence/truth-determining language. For example, derelictions of counsel may impact sentencing or foreclose appellate review.

In *Lantzy I,* a divided, *en banc* Superior Court found that Section 9543(a)(2)(ii)'s prejudice term did require a petitioner to provide evidence that he was wrongfully convicted. *See Lantzy I,* 712 A.2d at 292. In its analysis, in addition to reviewing Section 9543(a)(2)(ii), the majority also invoked the innocence-illegality term contained in Section 9542's scope-of-subchapter provision. *See id.* at 291 (relying on Section 9542's opening sentence as evidence that "the purpose of the PCRA is to afford collateral relief only to those individuals convicted of crimes that they did not commit and persons serving illegal sentences" (citing 42 Pa.C.S. § 9542)). Additionally, the majority opined that other avenues were available to vindicate a defendant's rights where he was unable to establish innocence, for example, the conferral of *nunc pro tunc* relief. *See id.*

Responding to the majority, the dissenting author, then-President Judge McEwen, developed that Section 9542's innocence focus is not the statute's exclusive aim. Rather, he explained, Section 9542 also prescribes:

> The action established in this subchapter shall be the *sole means of obtaining collateral relief* and *encompasses all other common law and statutory remedies* for the same purpose that exist when this subchapter takes effect, including habeas corpus and coram nobis.

42 Pa.C.S. § 9542 (emphasis added). Based on this requirement, President Judge McEwen observed, "pursuant to the express directive of the legislature, the PCRA was intended to

be the *sole* vehicle for litigating claims for collateral relief in state court." *Lantzy I*, 712 A.2d at 295 (McEwen, P.J., dissenting) (emphasis in original). According to the *Lantzy I* dissent, the majority's recognition of alternate avenues for collateral relief—made necessary by its narrow construction of Section 9543(a)(2)(ii)—directly contravened the statute's "sole means" mandate. *See id.* at 299–301. In particular, the dissent viewed the majority's approach as removing a wide category of post-conviction claims from the ambit of the PCRA, thus thwarting the General Assembly's objective of channeling the widest possible range of collateral review through the orderly, controlled process it had designed. *See id.* In this regard, President Judge McEwen observed that, short of a constitutional amendment, the Legislature could not foreclose habeas corpus review. *See id.* at 300 (citing Pa. Const. art. I, § 14 (mandating, as a general rule, that "the privilege of the writ of habeas corpus shall not be suspended")). Finally, the dissent touched on the concepts of structural error and presumed prejudice and provided authority for the proposition that the failure to file a requested direct appeal thwarts the truth-determining process and, thus, meets Section 9543(a)(2)(ii)'s prejudice requirement in any event. *See id.* at 296–99.

In the ensuing *Lantzy II* decision, this Court first credited both of the above, competing positions as being thoughtful and reasonable judicial expressions. *See Lantzy II*, 558 Pa. at 222, 736 A.2d at 569. Nevertheless, we observed, the Court already had disapproved of the substantially bifurcated system of post-conviction review which would flow from a narrow construction of the PCRA's scope. *See id.* (citing *Commonwealth v. Chester*, 557 Pa. 358, 733 A.2d 1242 (1999) (acknowledging that Section 9543(a)(2)(ii)'s prejudice requirement could reasonably foster the inference that the enactment was not intended to apply to capital sentencing claims, but concluding that such an interpretation would collide with Section 9542's sole-means directive)).[1] Further, we quoted *Chester* as follows:

1. This Court's *Chester* decision was not available to the Superior Court at the time *Lantzy I* was decided, as *Chester* post-dated *Lantzy I*.

Given that the choice was between a unified statutory procedure or bifurcated review having statutory and common law components, it seems clear that the General Assembly intended to channel all claims requiring review through the framework of the PCRA.

*Id.* at 223, 736 A.2d at 569 (quoting *Chester*, 557 Pa. at 375, 733 A.2d at 1251). *Lantzy II* continued:

*Chester* aligns with President Judge McEwen's dissenting opinion in this case, which harmonized the "guilt or innocence" and "sole means" provisions of the PCRA utilizing essentially the same logic. This reasoning compels the conclusion that the PCRA provides the exclusive remedy for post-conviction claims seeking restoration of appellate rights due to counsel's failure to perfect a direct appeal, since such claims also were cognizable on traditional *habeas corpus* review.

*Id.* at 223, 736 A.2d at 570–71 (footnote omitted).

*Lantzy II* also endorsed President Judge McEwen's analysis reconciling Section 9543(a)(2)(ii)'s prejudice requirement with its analogue under federal constitutional law, per *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), and implementing the concept of presumed prejudice relative to a complete denial of counsel. *See Lantzy II*, 558 Pa. at 224–26, 736 A.2d at 570–71. This Court stated:

Thus, we hold that, where there is an unjustified failure to file a requested direct appeal, the conduct of counsel falls beneath the range of competence demanded of attorneys in criminal case, denies the accused the assistance of counsel guaranteed by the Sixth Amendment to the United States Constitution and Article I, Section 9 of the Pennsylvania Constitution, as well as the right to direct appeal under Article V, Section 9, and constitutes prejudice for purposes of Section 9543(a)(2)(ii). Therefore, in such circumstances, and where the remaining requirements of the PCRA are satisfied, the petitioner is not required to establish his

innocence or demonstrate the merits of the issue or issues which would have been raised on appeal.

\* \* \*

The remedy for the deprivation of this fundamental right of appeal is its restoration.

*Id.* at 226–28, 736 A.2d at 572–73 (footnote omitted).

Finally, adding perspective to the present controversy, throughout the *Lantzy* line of decisions, the Commonwealth vigorously opposed the substantially bifurcated system of collateral review which all jurists (majority and dissenting) agreed would result from a narrow construction of the PCRA's scope. *See id.* at 221–22, 736 A.2d at 568–69.

## B. The Present Case

Appellee's convictions are for sexual offenses. His criminal conduct, entailing the abuse of a child, was prolonged and heinous. The resultant judgment of sentence imposes a term of incarceration of 27 to 97 years. Appellee did not seek direct appellate review.

Approximately one year after the convictions, however, Appellee sought relief under the PCRA. In *pro se* and counseled submissions, he alleged that his trial attorney failed to contest his judgment of sentence by filing a notice of appeal, despite his explicit request for counsel to do so. Appellee proffered his own testimony to this effect as evidentiary support at an ensuing hearing. *See* N.T., Mar. 17, 2008, at 9. His trial attorney, however, testified that no such request was made of him. For example, the following interchange between Appellee's post-conviction and trial attorneys occurred during a discussion of the sentence imposed:

Q. Is that the only criteria [sic] for the appeal of the sentence[—]it's legality?

A. I didn't see any abuse of discretion and I discussed that with [Appellee] after the trial and after the sentencing proceeding had concluded, and I discussed that with him

in detail before he was taken back and I told him if you change your mind contact me.

\* \* \*

... Based upon our discussion at the conclusion of the sentencing I told him expressly what my belief was and I said should you think it over ... and [if] you wish to appeal in any aspect of this contact me. He did not.

Q. [I]s it your testimony here today that [Appellee] did not direct you to appeal his sentence or any other aspect of this? Is that your testimony?

A. That is my testimony.

Q. You're saying that he didn't tell you to appeal this 97–year sentence?

A. That's correct.

*Id.* at 86.

Of more direct relevance to this appeal, after the presentation of Appellee's brief testimony concerning his asserted request for an appeal, on cross-examination, the attorney for the Commonwealth set out to elicit an admission that Appellee had committed the criminal acts for which he was convicted. This effort was challenged as beyond the scope of the direct examination, but the PCRA court overruled the objection. Appellee responded that he did, in fact, commit the offenses; further, he acknowledged that he previously had admitted his guilt during the presentence investigation, at sentencing, and in the assessment process required under Megan's Law, 42 Pa.C.S. §§ 9791–9799.9. *See* N.T., May 17, 2008, at 11–13. When asked why he wished to pursue an appeal, Appellee expressed a belief that the length of his sentence was unfair. *See id.* at 15–16.

In its post-hearing brief, the Commonwealth argued that the innocence-related language contained in Sections 9542 and 9543(a)(2)(ii) rendered Appellee ineligible for PCRA relief, in light of his admission of guilt. As authority, the Commonwealth cited general language from a pre-*Lantzy II* decision of this Court, *Commonwealth v. Peterkin*, 554 Pa. 547, 557–58, 722 A.2d 638, 643 (1998) ("The purpose of the [PCRA] is not to

provide convicted criminals with the means to escape well-deserved sanctions, but to provide a reasonable opportunity for those who have been wrongly convicted to demonstrate the injustice of their conviction."); two earlier Superior Court decisions which were consistent with *Lantzy I;* and *Coady v. Vaughn,* 564 Pa. 604, 770 A.2d 287 (2001).[2] The Commonwealth did not reference *Lantzy II,* did not provide any substantive discussion of Section 9542's sole-means prescription, and did not mention the concern with bifurcation which was the basis for the *Lantzy II* decision.

The PCRA court denied relief on the post-conviction petition. Rather than resolving the sharp credibility dispute with which it was presented (concerning whether or not Appellee asked his trial attorney to pursue an appeal), the court adopted the Commonwealth's position that Appellee simply "does not fall within the scope of the [PCRA] because [he] admits that he was convicted for crimes he did commit." *Commonwealth v. Haun,* No. CP–14–CR–1493–2004, *slip op.* at 1 (C.P.Centre, Nov. 4, 2008). The court anchored this reasoning in Section 9542's innocence-illegality term. *See id.* at 2. Among other pre-*Lantzy II* decisions, the court cited *Lantzy I,* without acknowledging that it had been disapproved. *See id.* Like the Commonwealth's argument, the PCRA court's rationale also afforded no attention to the sole-means directive of Section 9542 or the salient concern with bifurcation.

On Appellee's appeal, the Superior Court reversed and remanded for further proceedings. *See Commonwealth v. Haun,* 984 A.2d 557 (Pa.Super.2009). From the outset of its opinion, the Superior Court recognized a material flaw in the post-conviction court's reasoning, since the PCRA court failed to recognize that *Lantzy I* had been overturned. The intermediate court observed, nonetheless, that the *Lantzy* expressions were focused more on Section 9543(a)(2)(ii)'s prejudice

2. The majority opinion in *Coady* did not concern itself, materially, with the Post Conviction Relief Act. *See Coady,* 564 Pa. at 606–09, 770 A.2d at 288–90. Apparently, the Commonwealth's citation was to a concurring opinion which discussed the subject. *See id.* at 613, 770 A.2d at 293 (Castille, J., concurring).

requirement than on Section 9542's scope provision, given the ineffectiveness overlay with which the respective *Lantzy* tribunals were presented. *See id.* at 559–60. Accordingly, the appellate court regarded it as an issue of first impression whether Section 9542—standing alone—served to reserve PCRA review for prisoners claiming actual innocence. *See id.* at 561. Nevertheless, the Superior Court had little trouble extending *Lantzy II's* rationale, on its terms, to the Section 9542 context, not the least because that is the passage of the PCRA in which the sole-means prescription is set forth, and since the narrow construction of Section 9542 proposed by the Commonwealth and adopted by the PCRA court squarely implicates the concern with bifurcation which served as the basis for *Lantzy II. See id.* at 559. Finally, the Superior Court reviewed the line of cases reconciling Section 9543(a)(2)(ii)'s prejudice requirement with its federal analogue and explained why such decisions lent additional support to its approach. *See id.* at 560–61.

We allowed appeal to address the residual concern being pursued by the Commonwealth regarding *Lantzy II.*

## II. Arguments and Analysis

Presently, the Commonwealth contends that Section 9542's innocence-illegality proviso is unambiguous; therefore, it cannot be disregarded under the pretext of pursuing the statute's spirit. According to the Commonwealth, this Court "need look no further" in assessing the appropriate scope of the PCRA. Brief for Appellant at 11. In attempting to address *Lantzy II*, the Commonwealth claims that the Court's precise holding (that an unjustified failure to file a requested direct appeal constitutes prejudice) cannot apply here, in light of the testimony of Appellee's trial attorney that he was never asked to lodge an appeal. *See id.* at 13–14. The Commonwealth's remaining (and rather confusing) commentary concerning *Lantzy II* is as follows:

This Honorable Court continues in its *Lantzy* opinion: "Therefore, in such circumstances [*i.e.*, in the face of an unjustified failure to file a requested direct appeal], and

where the remaining requirements of the PCRA are satisfied, the petitioner is not required to establish his innocence or demonstrate the merits of the issue or issues which would have been raised on appeal." *Lantzy*, 736 A.2d at 572. Accordingly, Appellee ... is not required to establish his innocence, which is a requirement that he could never fulfill. The burden of establishing innocence is a hurdle that must be conquered, and is quite distinct from an admission of guilt. Appellee ... has no hurdles remaining, as he has admitted to his guilt and has no right to seek relief under the Post Conviction Relief Act.

*Id.* at 14–15; *cf. id.* at 16 ("[W]hile it is argued that the prejudice component of an ineffective assistance of counsel claim can be met even when a petitioner is unable to prove that he was either convicted of a crime he did not commit or that he was serving an illegal sentence, the plain meaning of 42 Pa.C.S. § 9542 may not be denied."). The Commonwealth provides an equally unhelpful discussion of two decisions underlying *Lantzy II—Chester* and *Commonwealth v. Kimball*, 555 Pa. 299, 724 A.2d 326 (1999)—as its response to a directive of this Court conveyed in the order allowing the appeal. *See Commonwealth v. Haun*, 608 Pa. 415, 12 A.3d 284 (2011) (*per curiam*). In its discussion, the Commonwealth does not come to terms with Section 9542's sole-means provision or the concern with bifurcation which resided at the heart of the *Lantzy* decisions.

Appellee, on the other hand, grounds his argument in the rationale of *Lantzy II*, discussing both the sole-means proviso, which was central to that decision, and the bifurcation concern implicated by a narrow construction of PCRA's scope tethered solely to innocence and illegality-of-sentence claims. Appellee also observes that *Lantzy II* has been consistently followed by this Court, for example, in *Commonwealth v. Liebel*, 573 Pa. 375, 825 A.2d 630 (2003), where its holding was extended to the unjustified failure to file a requested petition for allowance of appeal. *See id.* at 384, 825 A.2d at 635–36; *see also Commonwealth ex rel. Dadario v. Goldberg*, 565 Pa. 280, 288, 773 A.2d 126, 131 (2001) (holding that a post-conviction peti-

tioner's ineffectiveness claims resided within the PCRA's scope, although they did not appear to implicate the time-of-trial truth-determining process in a traditional sense). Finally, responding to the Commonwealth's position that *Lantzy II* is not implicated on account of the attestation of Appellee's trial attorney that he was never asked to pursue an appeal, Appellee notes that his own evidence was to the contrary and that the PCRA court never resolved the resultant factual dispute. *See* Brief for Appellee at 4 ("[T]he PCRA court made no finding of fact as to whether the request was made as it acceded to the Commonwealth's request to dismiss the petition without factual findings. The Commonwealth cannot ask this Court to make a credibility determination or a finding that the request was not made.").

Supplementing Appellee's arguments, the Pennsylvania Association of Criminal Defense Lawyers filed an *amicus* brief, arguing as follows:

> More than a decade ago, this Court firmly and unequivocally rejected the position asserted by the Commonwealth in this case, *i.e.*, that only "innocent" persons may proceed by PCRA. It recognized "the legislative directive that the PCRA is intended to provide the sole means for obtaining collateral review and relief, encompassing all other common law rights and remedies, including habeas corpus." This holding derived not only from the PCRA itself, but from the Pennsylvania Constitution's guarantee of a right to direct appeal review of criminal convictions and sentences of all persons, not only those who are innocent. That construction of the PCRA was also essential to avoid the conclusion that the Legislature had impermissibly suspended the writ of habeas corpus, in violation of Article I, section 14 of the Pennsylvania Constitution. [A]ppellant advances no argument at all that could justify overturning this Court's consistent line of pertinent authority.
>
> *     *     *
>
> This Court has twice held that the amended PCRA does not limit post-conviction relief to those who claim absolute innocence of the underlying offense, and has decided many other

cases consistent with those precedents. While this Court certainly has the power and authority to overrule its own precedents when persuaded that it had formerly erred, the Commonwealth's brief makes no persuasive argument for that exceptional result here, and none can be imagined.

*     *     *

[O]ur Constitution's Declaration of Rights, from its very beginning, has promised that "the privilege of the writ of habeas corpus shall not be suspended, unless when in case of rebellion or invasion the public safety may require it." Pa. Const. art. I, § 14. *See also* 42 Pa.C.S. § 6501(a). It is expressly against that backdrop that this Court decided such cases as *Chester, Lantzy* and *Dadario.* In all of those cases, and many others, this Court has noted that the PCRA was intended to serve as a unitary scheme fulfilling, not repealing, the irrevocable promise of habeas corpus. Brief for *Amicus* Pa. Ass'n of Criminal Def. Lawyers at 4, 6, 13 (citations omitted). To the degree the Commonwealth suggests a distinction between petitioners who merely omit an averment of innocence and those who concede guilt, *amicus* explains that such a distinction is untenable. In this regard, *amicus* develops that the petitioner in *Lantzy* himself pled guilty and later sought primarily to challenge the sentence imposed on him. *See id.* at 7–8 ("Lantzy's PCRA claims included, specifically, an attack on the discretionary aspects of sentencing. This Court held Lantzy was entitled to proceed under the PCRA." (footnote omitted)). Thus, *amicus* argues, *Lantzy II* cannot be limited to petitioners who, even if they had not claimed innocence, at least had not admitted guilt.

Upon our review, we agree with the main position of the Superior Court, Appellee, and *amicus.* In its brief, the Commonwealth has provided us with nothing to suggest that we were wrong, in *Lantzy II,* to recognize the tension between the innocence-related and sole-means provisions of the PCRA. Rather, the Commonwealth's arguments simply ignore the latter, thus providing an exceptionally poor platform to secure a revisiting of this area of the law. The Commonwealth's driving focus on "plain meaning" gains its only force through

the attempt to remove Section 9542's opening sentence from its context, contrary to the Legislature's explicit guidance. *See* 1 Pa.C.S. § 1922(2) (establishing the presumption, in matters of statutory construction, "[t]hat the General Assembly intends the entire statute to be effective and certain").

This Court has taken great pains on multiple occasions to explain why we believe the General Assembly preferred a broader construction of the PCRA's scope, as exemplified by *Lantzy II.* The Legislature has been free for more than a decade to modify its approach (within the limits of the Constitution) if it so desired, and it has not done so. We decline, at this juncture, to effectively overrule our decision based on a presentation which refuses to come to terms with our opinion's governing rationale.[3]

We recognize that the prior cases centrally concerned Section 9543(a)(2)(ii)'s prejudice requirement. Nevertheless, the salient analysis equally pertains to Section 9542, particularly since Section 9542's own sole-means provision has always served as the linchpin of the dispositive rationale. *See, e.g., Lantzy II,* 558 Pa. at 222–23, 736 A.2d at 569. Indeed, as a matter of statutory construction, the task of reconciling the tension between Section 9542's internal innocence-illegality and sole-means provisos is a far simpler matter than the consideration of Section 9543(a)(2)(ii)'s prejudice term, as was necessary in the *Lantzy* decisions. In this regard, the Legislature has specified (subject to limited exception not applicable here): "[W]henever, in the same statute, several clauses are irreconcilable, the clause *last in order of* date or *position* shall prevail." 1 Pa.C.S. § 1934 (emphasis added). In Section 9542, the sole-means term is last in order of position; accordingly, it should predominate,[4] particularly in the absence of any substantive argument why this is unreasonable.

3. As noted above, to date, the Commonwealth consistently has opposed a bifurcated system of post-conviction review. Nevertheless, in the present case it fails to appreciate that this would be the result of our acceptance of its argument, per the understanding reflected in all of the existing judicial expressions on this subject.

4. The "last in order of date" component is not dispositive here, since the innocence-illegality and sole means provisos were incorporated into

■ Finally, as to the Commonwealth's representation that the record establishes Appellee's failure to request a direct appeal, this simply is not so. Rather, as Appellee and *amicus* observe, the parties presented conflicting evidence on the subject and the PCRA court made no factual finding. In the circumstances, the Commonwealth cannot rely on a credibility judgment which does not exist, apparently because it was thwarted when the PCRA court was led to overlook the PCRA's sole-means proviso and *Lantzy II*. Thus, per the Superior Court's directive, the matter is to be returned to that court for the necessary factual assessment.

■ We hold that a concession of guilt does not, *per se*, foreclose prisoner access to the PCRA.

The order of the Superior Court is affirmed.

Chief Justice CASTILLE, Justices EAKIN, BAER, TODD, McCAFFERY, and ORIE MELVIN join the opinion.

Section 9542 contemporaneously. *See* Act of April 13, 1988, P.L. 336, No. 47 § 3 (as amended 42 Pa.C.S. §§ 9541–9546).