**[J-36-2019]**
**IN THE SUPREME COURT OF PENNSYLVANIA**
**EASTERN DISTRICT**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | : | No. 767 CAP |
| | : | |
| Appellee | : | Appeal from the Order dated May 23, |
| | : | 2018 in the Court of Common Pleas, |
| | : | York County, Criminal Division at No. |
| v. | : | CP-67-CR-0001762-1991. |
| | : | |
| | : | SUBMITTED: March 11, 2019 |
| PAUL GAMBOA TAYLOR, | : | |
| | : | |
| Appellant | : | |

<u>**OPINION IN SUPPORT OF AFFIRMANCE**</u>

**JUSTICE DOUGHERTY**                    **DECIDED: November 6, 2019**

This case forces us to confront a question of immense constitutional significance: whether a lower court possesses authority to order a higher tribunal to rehear an appeal where a defendant alleges that a constitutional error — in this case, a due process claim predicated on supposed judicial bias — occurred during the original appellate process. Without hesitation or meaningful analysis, Justice Wecht would conclude lower courts do possess this power, effectively authorizing those courts to undo our prior, binding decisions. Respectfully, this conclusion is indefensible. As I explain below, whether an allegation of appellate court error is cognizable under the Post Conviction Relief Act ("PCRA"), 42 Pa.C.S. §§9541-9546, is an issue of first impression for this Court, and the answer to that question is far from obvious. Even if the Legislature had intended to make appellate court errors of the nature alleged here cognizable under the PCRA, I conclude the remedy sought by appellant and sanctioned in the Opinion in Support of Reversal

("OISR") offends the Pennsylvania Constitution. Accordingly, I would affirm the order of the PCRA court.

Appellant filed the instant, facially untimely PCRA petition — his fourth — on December 8, 2014.[1] In his petition, appellant alleged he learned through various newspaper articles issued in the fall of 2014 that former Justice Seamus P. McCaffery had engaged in "*ex parte* emails with [appellant's] party opponent, the [Office of] Attorney General[,]" between 2008 and 2014. PCRA Petition at 1. During that period, this Court unanimously affirmed on untimeliness grounds the order dismissing appellant's third PCRA petition. *See Commonwealth v. Taylor*, 67 A.3d 1245 (Pa. 2013) ("*Taylor IV*"). In appellant's view, the fact that former Justice McCaffery traded emails with members of the OAG during the pendency of *Taylor IV* "raise[s] a serious risk of actual bias" implicating due process concerns. PCRA Petition at 1. The remedy for this alleged constitutional violation, appellant argued, is the grant of "a new PCRA appeal" in this Court. *Id.* at 13. *See also* N.T. 4/26/2018, at 13-14 (arguing "[t]he issue is . . . a due process violation" and "the remedy that we are asking [for] is a new appeal").

The PCRA court was not persuaded. *See id.* at 14 ("What authority do I have to order the Supreme Court to grant your client a new appeal? I have been waiting for that response for a year and a half now, and I haven't seen it."). Accordingly, it issued a notice of its intent to dismiss appellant's petition on May 1, 2018. In its notice the court explained that, even assuming appellant could support his allegation of actual judicial bias with real evidence, the PCRA court is inferior to this Court; therefore, it lacked the authority to order this Court to rehear appellant's prior PCRA appeal anew. *See* Notice of Intent to Dismiss,

---

[1] Throughout his brief before this Court, appellant asserts that he filed his petition on December 5, 2014. *See, e.g.*, Appellant's Brief at 4, 36 n.7. Neither the docket nor the time-stamp on the petition contained within the certified record supports this assertion.

5/1/2018, at 3, *citing* PA. CONST. art. V, §§ 2, 10.  On May 23, 2018, the PCRA court formally dismissed appellant's petition.

Faced on appeal with the opposing positions forwarded by appellant and the Commonwealth (which adopts the PCRA court's position), Justice Wecht summarily credits the former and assails the latter.  Without citing any authority, the OISR proclaims that "[i]f an error of constitutional magnitude occurs during the appellate process, the PCRA is the sole means of collaterally attacking the final judgment on that basis."  OISR at 9.  Further, and again without identifying any supporting authority, the OISR declares "there is no requirement that a post-conviction claim be premised upon a violation of rights occurring at trial, nor is there any suggestion in the PCRA itself or in this Court's precedent that alleged errors occurring in the appellate process are immune from collateral attack, or that only an appellate court can redress appellate errors."  *Id.* at 9-10.  To my knowledge, and as appellant apparently agrees, *see* Appellant's Reply Brief at 2, this is an issue of first impression for this Court.  As such, it deserves far greater attention than the OISR accords to it — particularly because I do not believe the answer is nearly as simple as the hasty conclusions expressed in the OISR suggest.

> The scope of the PCRA is explicitly defined in the Act as follows:
>
> This subchapter provides for an action by which persons convicted of crimes they did not commit and persons serving illegal sentences may obtain collateral relief.  **The action established in this subchapter shall be the sole means of obtaining collateral relief and encompasses all other common law and statutory remedies for the same purpose that exist when this subchapter takes effect, including habeas corpus and coram nobis.**  This subchapter is not intended to limit the availability of remedies in the trial court or on direct appeal from the judgment of sentence, to provide a means for raising issues waived in prior proceedings or to provide relief from collateral consequences of a criminal conviction.  Except as specifically provided otherwise, all provisions of this subchapter shall apply to capital and noncapital cases.

42 Pa.C.S. §9542 (emphasis added).  We have explained this language "demonstrates quite clearly that the General Assembly intended that claims that **could** be brought under

the PCRA **must** be brought under that Act." *Commonwealth v. Hall*, 771 A.2d 1232, 1235 (Pa. 2001) (emphasis in original). *See also Commonwealth v. Fahy*, 737 A.2d 214, 223 (Pa. 1999) ("the PCRA subsumes the writ of habeas corpus with respect to remedies offered under the PCRA"), *citing Commonwealth v. Peterkin*, 722 A.2d 638 (Pa. 1998). The precise question we must answer first, then, is whether appellant's claim can be brought under the PCRA.

"In order to state a cognizable claim under the PCRA, a PCRA petitioner must plead and prove by a preponderance of the evidence that his conviction resulted from one or more of the errors or defects listed in 42 Pa.C.S. §9543(a)(2)." *Commonwealth v. Liebel*, 825 A.2d 630, 632 (Pa. 2003). Although not explicitly stated in his petition, the only error even arguably implicated by appellant's judicial bias-based due process claim is Section 9543(a)(2)(i). *See* N.T. 4/26/2018, at 14 (arguing that under the PCRA, "if it is a constitutional violation, [a PCRA court] has jurisdiction"). That section permits relief where a petitioner's conviction or sentence resulted from "[a] violation of the Constitution of this Commonwealth or the Constitution or laws of the United States which, in the circumstances of the particular case, so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place." 42 Pa.C.S. §9543(a)(2)(i).

I have little conceptual difficulty accepting that this language encompasses judicial bias-based due process claims related to a judge who presided over a trial or sentencing proceeding; it is considerably more difficult, however, to reach the same conclusion with respect to a supposed bias harbored by an appellate jurist. This is so because appellate jurists, and the appellate process generally, have no connection to "the truth-determining process" or the reliability of the "adjudication of guilt or innocence." Thus, contrary to Justice Wecht's belief, *see* OISR at 9-10, a literal reading of Section 9543(a)(2)(i) in fact

supports the notion that appellate court errors, even those of constitutional magnitude, are **not** cognizable under the Act.

But I also recognize this Court has repeatedly expressed concern that the unavoidable result of a literal reading of this "truth-determining process" language "is a bifurcated system of post-conviction review, in which certain claims for relief are considered under the PCRA, while other claims for relief are considered outside its framework." *Commonwealth v. Lantzy*, 736 A.2d 564, 569 (Pa. 1999). Such a system, we have remarked, would run contrary to the legislature's intent to make the PCRA the exclusive vehicle for obtaining collateral review. *See id.*; 42 Pa.C.S. §9542. For this reason, at least in the context of ineffective assistance of counsel claims, we have "taken great pains on multiple occasions to explain why we believe the General Assembly preferred a broader construction of the PCRA's scope," regardless of the "truth-determining process" language contained in Section 9543(a)(2)(ii). *Commonwealth v. Haun*, 32 A.3d 697, 705 (Pa. 2011). *See, e.g.*, *Liebel*, 825 A.2d at 635-36 (counsel's failure to file petition for allowance of appeal on direct appeal "sufficiently establishes that the truth-determining process has been undermined"); *Commonwealth ex rel. Dadario v. Goldberg*, 773 A.2d 126, 130 (Pa. 2001) (claim that counsel had been ineffective during plea-bargaining process was cognizable under Section 9543(a)(2)(ii) despite fact that ineffectiveness may not have undermined truth-determining process in traditional sense); *Commonwealth v. Chester*, 733 A.2d 1242, 1250 (Pa. 1999) ("truth-determining" and "guilt or innocence" language used in Section 9543(a)(2)(ii) does not foreclose post-conviction review of penalty phase issues in capital case); *see also Lantzy*, 736 A.2d at 569-70 (rejecting Superior Court's conclusion that for a petitioner's claim to be cognizable under Section 9543(a)(2)(ii), the claim must raise a question of whether an innocent individual has been convicted).

On the other hand, "the boundaries of cognizable claims under the PCRA can only be extended so far as is consistent with the purposes of the statute[.]" *Commonwealth v. Judge*, 916 A.2d 511, 520 (Pa. 2007). Indeed, despite our recognition of the legislature's intent to channel the widest possible category of post-conviction claims into the PCRA's framework, we have on occasion recognized that certain issues fall outside the PCRA. *See Commonwealth v. West*, 938 A.2d 1034, 1044 (Pa. 2007) (substantive due process challenge to the continued validity of a judgment of sentence after a nine-year pre-incarceration delay not cognizable under the PCRA); *Judge*, 916 A.2d at 520 (allegation that Canada violated appellant's rights under the International Covenant for Civil and Political Rights by deporting him to face a death sentence not cognizable under the PCRA because claim has "no connection to the truth-determining process and do[es] not render the underlying adjudication of guilt or innocence . . . unreliable"). In these unique situations, we found the claims "did not implicate any of the remedies available pursuant to the PCRA and, accordingly, we held that *habeas* review was warranted." *West*, 938 A.2d at 1043. *See* PA. CONST. art. I, §14 ("[T]he privilege of the writ of habeas corpus shall not be suspended[.]"); 42 Pa.C.S. §6501 (same).

What we must decide here is whether an alleged constitutional error occurring during the appellate process — one that does not relate to counsel's performance — can be channeled into those broad categories of claims that are cognizable under the PCRA, or whether such a claim is too far removed from the truth-determining process to fall within the ambit of the PCRA. On balance, and especially without more pointed advocacy to the contrary, I am satisfied for purposes of this appeal that appellant's claim of appellate court error is (at least theoretically) cognizable under the PCRA. This conclusion hews most closely to this Court's jurisprudence regarding the cognizability of a broader scope

of claims under the PCRA, regardless of the statute's facially-limiting "truth-determining process" language.[2]

Notwithstanding my conclusion that appellate court errors are cognizable under Section 9543(a)(2)(i), I sharply disagree with Justice Wecht's position regarding the proper **relief** available for such errors — *i.e.*, an appeal *nunc pro tunc*. As a general matter, I have no doubt that an appeal *nunc pro tunc* falls within the range of available remedies under the PCRA. *See* 42 Pa.C.S. §9546(a) ("If the court rules in favor of the petitioner, it shall order appropriate relief and issue supplementary orders as to rearraignment, retrial, custody, bail, discharge, correction of sentence or other matters that are necessary and proper."). In fact, this Court has specifically embraced the *nunc pro tunc* reinstatement of appellate rights in certain situations where counsel is ineffective with respect to the appellate process. *See, e.g.*, *Liebel*, 825 A.2d at 636 (reversing with instructions for PCRA court to consider whether petitioner was entitled to file petition for allowance of appeal *nunc pro tunc* due to counsel's failure to do so); *Lantzy*, 736 A.2d at 572-73 (restoration of appellate rights *nunc pro tunc* warranted where counsel failed to file a requested direct appeal). In such circumstances, an appeal *nunc pro tunc* "is intended as a remedy to vindicate the right to an appeal where that right has been lost due to certain extraordinary circumstances." *Commonwealth v. Stock*, 679 A.2d 760, 764

---

[2] On this point, I observe this Court has on two occasions recognized, albeit implicitly, that its broad construction of the "truth-determining process" language in Section 9543(a)(2)(ii) applies with equal force to the identical language found in Section 9543(a)(2)(i). *See Commonwealth v. Hackett*, 956 A.2d 978, 985 (Pa. 2008) (rejecting argument that a *Batson* claim is "unrelated to the reliability of the verdict rendered" and so does not implicate a cognizable constitutional violation under Section 9543(a)(2)(i)); *Commonwealth v. Cruz*, 851 A.2d 870, 875, 878 (Pa. 2004) (holding relief was "available on collateral review in the particularized circumstances presented" even though the petitioner's claim he was denied due process and equal protection on direct appeal, on the basis of disparate treatment from his co-defendant, "asserts a breakdown in the appellate process, not trial").

(Pa. 1996). But I am aware of no instance in which this Court has held the PCRA authorizes the grant of an appeal *nunc pro tunc* to remedy a constitutional error committed by the appellate tribunal itself, rather than counsel. Nor, after careful consideration, do I believe a PCRA court is constitutionally authorized to afford this relief.

All Pennsylvania courts derive their judicial power or authority from the Constitution and the laws of the Commonwealth. PA. CONST. art. V, §1 ("The judicial power of the Commonwealth shall be vested in a unified judicial system[.]"). "At the apex of the Unified Judicial System is the Pennsylvania Supreme Court." *In re Bruno*, 101 A.3d 635, 663 (Pa. 2014), *citing* PA. CONST. art. V, §2(a) (Supreme Court is "highest court of the Commonwealth and in this court shall be reposed the supreme judicial power of the Commonwealth"). *See* 42 Pa.C.S. §501 (codifying PA. CONST. art. V, §2(a)). In addition to its supreme judicial power, this Court has "general supervisory and administrative authority over all the courts and [magisterial district judges.]" PA. CONST. art. V, §10(a). "This power implicates a dual authority: (1) over personnel of the system, among them jurists; and (2) over inferior tribunals[.]" *Bruno*, 101 A.3d at 678.[3]

Considering the clear judicial hierarchy enshrined in these various constitutional and statutory provisions, it is beyond peradventure that "[i]f a majority of the Justices of this Court, after reviewing an appeal before us (taken either by way of direct appeal or grant of allowance of appeal), join in issuing an opinion, our opinion becomes binding precedent on the courts of this Commonwealth." *Commonwealth v. Tilghman*, 673 A.2d 898, 903 (Pa. 1996) (citation omitted). *See, e.g.*, *Walnut St. Assocs., Inc. v. Brokerage*

---

[3] The General Assembly has also recognized this Court has "[a]ll powers necessary or appropriate in aid of its original and appellate jurisdiction which are agreeable to the usages and principles of law" and any power vested in it by statute. 42 Pa.C.S. §502. As well, the Court has "the power generally to minister justice to all persons and to exercise the powers of the court, as fully and amply, to all intents and purposes, as the justices of the Court of King's Bench, Common Pleas and Exchequer, at Westminster, or any of them, could or might do on May 2, 1722." *Id.*

*Concepts, Inc.*, 20 A.3d 468, 480 (Pa. 2011) ("intermediate appellate courts are duty-bound to effectuate this Court's decisional law") (citation omitted); *Commonwealth v. Provident Trust Co. of Philadelphia*, 180 A. 16, 17 (Pa. 1935) (same with respect to trial courts). "Our majority opinion is binding not only on the parties before us, under the doctrine of law of the case, but is precedent as to different parties in cases involving substantially similar facts, pursuant to the rule of *stare decisis*." *Tilghman*, 673 A.2d at 903 (footnotes omitted). Unless the United States Supreme Court reverses a decision of this Court, or this Court overrules its own prior decision, "the law emanating from the decision remains law." *Fiore v. White*, 757 A.2d 842, 847 (Pa. 2000).

The need for scrupulous adherence to this hierarchical system is manifest: it "lends uniformity and certainty to the law but allows sufficient flexibility for change by the highest court, but only the highest court, in our judicial system." *Lovrinoff v. Pennsylvania Tpk. Comm'n*, 281 A.2d 176, 178 (Pa. Cmwlth. 1971). *See also Malinder v. Jenkins Elevator & Mach. Co.*, 538 A.2d 509, 513 (Pa. Super. 1988) (inferior courts have an obligation to follow and apply Supreme Court decisions "so as to establish some measure of predictability and stability in our case law"). In that vein, we have cautiously guarded our role as the highest court in the Commonwealth and exhibited no tolerance for inferior courts that attempt to ignore or overturn our binding precedent. *See, e.g.*, *Commonwealth v. Buehl*, 658 A.2d 771, 782 (Pa. 1995) (PCRA court's vacation of death sentence, based on its conclusion this Court erred when it failed to vacate sentence on direct appeal, was improper; there is no authority "which permits the Courts of Common Pleas of this Commonwealth to overrule the decisions of this Court").

As I see it, Justice Wech's position that PCRA courts should be afforded the power to order appellate courts to rehear *nunc pro tunc* appeals based on supposed appellate court error would run afoul of these constitutionally-grounded principles. To understand

why this is so, we need only apply the OISR's proposed rule to the case at hand. Suppose that, upon remand, the PCRA court concludes a former Justice of this Court was biased when he participated in deciding *Taylor IV*.[4] As appellant points out, *see* Appellant's Brief at 25, that conclusion would necessarily entail a concomitant finding that the prior appellate tribunal was tainted in its entirety. *See Williams v. Pennsylvania*, 136 S.Ct. 1899, 1909 (2016) ("a due process violation arising from the participation of an interested judge is a defect 'not amenable' to harmless-error review, regardless of whether the judge's vote was dispositive"; "the appearance of bias demeans the reputation and integrity not just of one jurist, but of the larger institution of which he or she is a part"). In this way, the grant of an appeal *nunc pro tunc* premised on judicial bias would operate to undo the prior "tainted" decision, clearing a path for the appellate tribunal to issue a new decision without the interested jurist's participation. Stated differently, the grant of an appeal *nunc pro tunc* under these circumstances would, for all practical purposes, wipe *Taylor IV* from the record books.[5] As explained, only this Court or the United States Supreme Court has the power to undo our prior decisions.

---

[4] I do not mean to suggest that a PCRA court has the authority to make a factual finding of judicial bias on the part of an appellate jurist. In my view, that discrete issue raises a host of constitutional concerns in its own right. *See generally In re Bruno*, 101 A.3d at 688 ("the Supreme Court has supreme and general authority over the Unified Judicial System, which includes inferior tribunals and its personnel"); *Commonwealth v. Whitmore*, 912 A.2d 827, 832-33 (Pa. 2006) (noting the constitutional authority to exercise superintendency over the courts is exclusive to the Supreme Court). For the sole purpose of highlighting the faults in the OISR's analysis, however, I hypothetically assume a PCRA court is empowered to make a finding of judicial bias in the first instance.

[5] This distinguishes the instant situation from those in which we have approved the grant of an appeal *nunc pro tunc* to remedy the deprivation of the right to appeal based on ineffective assistance of counsel. *See, e.g.*, *Liebel*, *supra*; *Lantzy*, *supra*. In those cases, the grant of a new appeal did not nullify or cast doubt upon the propriety of the prior judicial decision in any way. The same cannot be said here.

In reaching the opposite conclusion, Justice Wecht relies solely upon the fact that the Philadelphia County Court of Common Pleas has reinstated appellate rights *nunc pro tunc* to petitioners who brought claims based upon the United States Supreme Court's decision in *Williams*.[6]  *See* OISR at 10-11.  According to the OISR, "[t]he due process right to an impartial tribunal was vindicated in *Williams* through the award of a new appeal[,]" and appellant should be entitled to the same relief from the PCRA court if he can successfully plead and prove his claim.  *Id.* at 11.  But this is not so.

With respect to *Williams*, I agree with the PCRA court that it is "of no help to [appellant]" in this matter.  Notice of Intent to Dismiss, 5/1/2018, at 3.  There is no question that the United States Supreme Court was empowered in *Williams* to vacate this Court's decision after it found that Williams's federal right to due process was violated when former Chief Justice Castille declined to recuse from his case.  *See, e.g., Council 13, Am. Fed'n of State, County & Mun. Emps., AFL-CIO v. Rendell*, 986 A.2d 63, 77 (Pa. 2009) ("It is fundamental that by virtue of the Supremacy Clause, the State courts are bound by the decisions of the Supreme Court with respect to the federal Constitution and federal law, and must adhere to extant Supreme Court jurisprudence.").  It is a far different matter, however, for a PCRA court to undo a decision of this Court based on its own conclusions that this Court or a particular member of it committed a constitutional violation.  Moreover, the fact that the Philadelphia County Court of Common Pleas has afforded appellate relief *nunc pro tunc* to a number of PCRA petitioners in the wake of the *Williams* decision carries

---

[6] Briefly, the *Williams* Court held that former Chief Justice Ronald D. Castille's failure to recuse where he earlier had significant, personal involvement as the District Attorney in a critical decision regarding the defendant's case — specifically, he authorized a trial prosecutor to seek the death penalty against Williams — gave rise to an unacceptable risk of actual bias under the federal Due Process Clause.  *Williams*, 135 S.Ct. at 1908. The High Court further held the error affected this Court's whole adjudicatory framework, and it therefore vacated this Court's decision so that Williams could present his claims without Chief Justice Castille's involvement.  *Id.* at 1910.

little weight, as it is well settled that decisions of the courts of common pleas are not binding on this Court. *E.g.*, *City of Philadelphia v. Price*, 215 A.2d 661, 663 (Pa. 1966). This is especially true where those decisions out of Philadelphia remain pending before this Court and we have yet to opine on the propriety of the PCRA court's actions in those matters.

In sum, while I find appellant's claim is cognizable under the PCRA, the relief championed by appellant and endorsed by the OISR would pose a direct threat to this Court's constitutional role as the highest court in this Commonwealth.[7]

However, there is in my view a constitutionally-permissible remedy for the exceptional case where a petitioner successfully pleads and proves in a timely PCRA petition that a constitutional violation occurred during the appellate process: a PCRA court can lawfully reinstate the petitioner's *nunc pro tunc* right to seek reargument of the original appellate decision pursuant to Pa.R.A.P. 2543. Although reargument is not a matter of right, but of sound judicial discretion, an appellate court may grant it "when there are compelling reasons therefor." Pa.R.A.P. 2543. From my perspective, a legitimate claim of constitutional error committed during the appellate process which is supported by credible evidence would ordinarily present a compelling reason warranting reargument. And crucially, an order reinstating a petitioner's right to seek reargument would not offend

---

[7] Justice Wecht apparently is unconcerned with granting PCRA courts unbridled power to undo our prior decisions because "[i]t would not be the PCRA court, but rather this Court, that has the final say on whether the record supports the relief awarded by the PCRA court." OISR at 14; *see also id.* at 13 ("if this Court disagrees with the merits of the claim of judicial bias, this Court can overturn the relief afforded by the PCRA court"). But importantly, this "[a]ssum[es] the Commonwealth appeals the grant of relief," *id.* at 13-14, which recent experience has taught us is not a certainty. Indeed, under the OISR's reasoning, this Court would be powerless to review the grants of relief in the Philadelphia cases cited in the OISR, since there are no pending Commonwealth appeals in those cases. For the reasons I have discussed, the Court should not willingly allow its hands to be tied in this manner, particularly when our Constitution dictates otherwise.

the judicial hierarchy set forth in the Pennsylvania Constitution, as it would merely present the appellate tribunal with the **opportunity** to reconsider its prior decision. In the same way that the *nunc pro tunc* reinstatement of the right to file a petition for allowance of appeal in this Court does not encroach on this Court's powers, neither would the *nunc pro tunc* reinstatement of the right to seek reargument. This remedy is, in my considered opinion, the only lawful one available to PCRA courts faced with a viable claim of appellate court error.[8]

In light of my determination that relief in the form of *nunc pro tunc* reinstatement of the right to seek reargument is theoretically available for a constitutional error committed by an appellate tribunal, I proceed to address whether a remand would be appropriate in this case. I conclude it would not be.

---

[8] In Justice Wecht's view, the right to seek reargument is insufficient to vindicate the constitutional right at issue because it imposes a discretionary threshold, which allegedly "was not the case in *Williams*[.]" OISR at 15. Again, however, Justice Wecht misunderstands what actually occurred in *Williams*. In that case, Williams filed a motion requesting that Chief Justice Castille recuse himself, but Chief Justice Castille denied the request without explanation or referral to the full Court. *Williams*, 135 S.Ct. at 1905. The United States Supreme Court subsequently granted Williams's petition for a writ of *certiorari* and ultimately vacated this Court's opinion, remanding for reconsideration without Chief Justice Castille's involvement. *Id*. at 1910. Given this procedural posture, the assertion in the OISR that the "due process right to an impartial tribunal was vindicated in *Williams* through the award of a new appeal[,]" OISR at 11, is imprecise. Properly understood, *Williams* demonstrates only that a higher tribunal is empowered to vacate a lower court's decision when it determines the lower court committed a constitutional violation — the precise proposition I forward here. Furthermore, in every practical sense, restoring a PCRA petitioner's right to seek reargument would place the petitioner on the same footing as Williams: it would allow this Court an opportunity to determine whether a due process violation occurred and, if the Court declines to grant reargument, the petitioner could seek review of that decision before the United States Supreme Court, just as Williams did. Thus, the OISR position that the right to seek reargument renders appellate-based due process violations subordinate to other similar violations, *see* OISR at 15, and that it insulates from review constitutional errors attributable to this Court, *see id.* at 13, is without foundation.

Notably, my review of the record reveals that appellant's petition was untimely. According to appellant, he "timely filed his [p]etition on December 5, 2014, within sixty days of the first public revelations that Justices of this Court were involved in the email exchanges." Appellant's Brief at 36 n.7. *See* 42 Pa.C.S. §9545(b)(2) ("Any petition invoking an exception [to the timebar] shall be filed within 60 days of the date the claim could have been presented.").[9] As previously noted, *see supra* n.1, appellant's petition was filed on December 8, 2014, not December 5, 2014. More importantly, the newspaper articles attached to appellant's own petition proves he was aware, or at least should have been aware, of the allegations against Justice McCaffery as early as October 2, 2014. *See* PCRA Petition, 12/8/2014, at Exhibit A, *citing* Karen Langley, *High Court Justice Sent Emails with Explicit Content*, PITTSBURGH POST-GAZETTE (Oct. 2, 2014) ("The (Allentown) Morning Call reported state Supreme Court Justice Seamus McCaffery forwarded at least eight sexually explicit emails from his personal email account to an employee in the state attorney general's office who later shared them with more than a dozen others."; "Justice McCaffery is identified as recipient or sender of 54 emails reviewed by The Morning Call, and the emails . . . are part of an extensive email chain, with some including photos of nude centerfolds, sex videos, sex jokes and political humor."). The trigger date for appellant's claim that Justice McCaffery was improperly communicating with appellant's party-opponent was thus October 2, 2014 — more than sixty days before appellant filed his petition.

Surely recognizing his petition did not satisfy Section 9545(b)(2)'s sixty-day filing requirement, appellant attempted to move the goalposts, arguing the trigger date for his

_____

[9] As of December 24, 2018, Section 9545(b)(2) was amended to provide that any PCRA petition invoking a timeliness exception must be filed within one year of the date the claim first could have been presented. However, this amendment does not apply to appellant's case, which arose before the effective date of the amendment.

due process claim was not until between October 8th and 16th, 2014, when news accounts "revealed that communications were not limited to pornographic images sent by one Justice from his personal account, but included thousands of other emails from multiple Justices[.]" PCRA Petition, 12/8/2014, at 12. This argument, however, cuts squarely against appellant's assertion in his petition that the pornographic emails revealed by October 2, 2014 "betray[ ] a degree of familiarity that itself could trigger a duty to disclose." *Id.* at 11. In fact, as appellant explained in his motion for discovery, former Chief Justice Castille took that exact position even before Justice McCaffery's involvement became known. *See* Motion for Discovery, 12/8/2014, at 5 and Exhibit A, *citing* Marc Levy, *Top Judge Warns of More Fallout from Porn Emails*, ASSOCIATED PRESS (Sept. 29, 2014) ("[Castille] warned Monday that some court cases could be affected if it is true that judges were among those state employees who exchanged pornographic material by email with members of the attorney general's office. For the judges, the exchange of such material with government lawyers who appeared before them could represent a conflict of interest[.]"; "Asked later by The Associated Press if a conflict-of-interest finding could open up a new avenue of appeal in previously decided cases, Castille responded through a spokeswoman, 'yes, that potential does exist.'"); Steve Esack*, Castille Asks Kane to Check Porn Emails for Judges' Names*, ALLENTOWN MORNING CALL (Sept. 30, 2014) ("A judge could be in violation of judicial rules of conduct for sending pornographic emails on government-owned or personal computers, Castille said. . . . And not just because of the sexually explicit nature of the alleged emails, he said. A judge should not be fraternizing too closely with either prosecutors or defense attorneys by sending personal emails of any kind[.]").

These articles convince me that appellant could have raised his claim as early as October 2, 2014, when the first news articles revealed Justice McCaffery had exchanged

emails with members of the OAG.[10]  As appellant concedes, the revelation of these exchanges was sufficient to trigger his due process claim, and the simple fact that still more emails eventually became known does not excuse his failure to file sooner. Consequently, pursuant to 42 Pa.C.S. §9545(b)(2), appellant had until December 1, 2014 in which to raise his due process claim.[11]  Because he waited until December 8, 2014 to

_____

[10] Justice Wecht considers it inappropriate to assess the timeliness of appellant's petition at this juncture, asserting we lack a developed record upon which to evaluate the PCRA court's jurisdiction.  *See* OISR at 15 n.9.  I disagree.  Appellant included within the record the very news articles that definitively prove he did not raise his claim within sixty days of the date the claim could have been presented, as Section 9545(b)(2) requires, and no additional arguments will alter this reality.  To the extent the OISR suggests our decision in *Commonwealth v. Burton*, 158 A.3d 618 (Pa. 2017), may impact the timeliness considerations of this case, it is incorrect.  While it is true we held in *Burton* that the presumption that information which is of public record cannot be deemed "unknown" for purposes of Section 9545(b)(1)(ii) does not apply to *pro se* petitioners, the record unequivocally demonstrates appellant has been continuously represented by the Federal Community Defender Office for more than twenty years.  In fact, current counsel listed on this appeal, Matthew C. Lawry, Esq. and David L. Zuckerman, Esq., began representing appellant in 2008, when they filed a third PCRA petition on his behalf.  The record and docket reveal counsel have never sought leave of court to withdraw their representation of appellant as would be required by Pa.R.Crim.P. 120(B)(1).  It is thus irrefutable that petitioner was represented by counsel at all relevant times, and the OISR's invocation of *Burton* is nothing more than a red herring.

[11] In previous similar cases concerning former Justice J. Michael Eakin, who was ensnared in the same email scandal, this author reached the conclusion that the petitioners failed to satisfy the newly-discovered fact exception to the PCRA's timebar because "the emails are simply not facts upon which the belated claim of a due process violation can be predicated."  *Commonwealth v. Robinson*, 204 A.3d 326, 352 (Pa. 2018) (Dougherty, J., Opinion in Support of Affirmance).  *See also Commonwealth v. Blakeney*, 193 A.3d 350, 369 (Pa. 2018) (Dougherty, J., Opinion in Support of Affirmance) ("In my view, an accusation of judicial bias based on the mere receipt of an email should not be elevated to a finding of the existence of judicial bias as a material fact.").  Appellant's case is in a different posture since it concerns the conduct of Justice McCaffery, which was not at issue in *Blakeney* or *Robinson*.  However, because appellant failed to satisfy 42 Pa.C.S. §9545(b)(2), there is no need to decide whether, unlike the petitioners in *Blakeney* and *Robinson*, he demonstrated a sufficient nexus between the emails and the alleged constitutional violation.

do so, his petition is untimely and no purpose would be served by remanding to the PCRA court.[12]

For the foregoing reasons, I would affirm the order of the PCRA court.

Justice Mundy joins this opinion in support of affirmance.

---

[12] Even if appellant had timely filed his petition, I would affirm the PCRA court's decisions to deny discovery and petition amendment. With respect to discovery, the scope of the materials sought by appellant — **6.4 million emails** that had passed through OAG servers between 2008 and 2015 — is grossly overbroad. Moreover, appellant failed to make a showing of exceptional circumstances warranting discovery under Pa.R.Crim.P. 902(E)(1). The OAG provided appellant with the Gansler Report, which "did not uncover a single email that could be characterized as an *ex parte* case-related communication." Commonwealth's Supplemental Response in Opposition to Discovery, 3/3/2017, at 3. As well, the OAG voluntarily conducted an internal search of its own servers for any emails involving a jurist of this Court and any attorney of record in appellant's case, which yielded 26 irrelevant communications; a search of emails including appellant's name yielded no results whatsoever. *See id.* at 10. Based on these proffers, I agree with the PCRA court that discovery was unwarranted since appellant "has not directed this Court's attention to one bit of evidence suggesting improper conduct by any of the Justices." Notice of Intent to Dismiss, 5/1/2018, at 3. *See also* OISR at 17 (conceding appellant's "belief that there may be additional offensive and inappropriate emails would appear to be speculative"). Regarding petition amendment, I likewise agree with the PCRA court that denial was appropriate where petitioner waited until April 2018 — nearly three and one-half years after he initially filed his petition — to amend his petition to incorporate additional due process claims aimed at former Justice Eakin.