J-A01011-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| TYRON DIXON TILDON | : | |
| | : | |
| Appellant | : | No. 1126 EDA 2021 |

Appeal from the PCRA Order Entered May 11, 2021
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0008638-2012

BEFORE: LAZARUS, J., NICHOLS, J., and McCAFFERY, J.

MEMORANDUM BY McCAFFERY, J.: **FILED NOVEMBER 7, 2023**

Tyron Dixon Tildon (Appellant) appeals from the order entered on May 11, 2021, in the Philadelphia County Court of Common Pleas, dismissing his timely petition for collateral relief filed under the Post Conviction Relief Act (PCRA).[1] Appellant seeks relief from an aggregate sentence of life imprisonment, imposed on August 5, 2013, after a jury found him guilty of first-degree murder, carrying a firearm without a license, and recklessly endangering another person (REAP).[2] On appeal, Appellant raises a myriad of ineffective assistance of counsel claims. Based on the following, we affirm on the basis of the PCRA court opinion.

---

[1] 42 Pa.C.S. §§ 9541-9546.

[2] 18 Pa.C.S. §§ 2502(a), 6106(a)(1), and 2705, respectively.

The PCRA court summarized the underlying facts as follows:

On the evening of October 6, 2006, Denise Chandler drove to the intersection of N. Cleveland Street and W. Cumberland Street, intending to purchase a bag of heroin from Mark Jordan. Chandler arrived at the intersection and found Jordan standing outside of a bar. Chandler drove to Jordan, asked if he was carrying heroin, and invited him to the car. Once Jordan entered the car, Chandler parked on the corner of Cleveland and Cumberland Streets.

As Chandler gave Jordan money for the drugs, gunshots rang out. Chandler attempted to pull out from her parking spot, but Appellant crossed in front of her car on foot with a black revolver in his hand, forcing Chandler to wait until he entered the car in front of her. Jordan looked down Cleveland Street and saw "a lot of people running, but [Appellant] was the only one coming down Cleveland. They [were] all running away from where Bilal[3] was. He ran right past the car and he looked right at me when I was in the car."

After . . . Appellant stepped into that car, Chandler forced her way [in] the front of Appellant, honking her horn and speeding out of her parking spot onto York Street. Suddenly, Jordan exclaimed "Stop, stop, that's my boy." Chandler stopped the car; Donnell Goulbourne ran up to Chandler's car yelling, "Let me get in, let me get in, they shootin!" Chandler let Goulbourne into her car. Upon entering, Goulbourne said, "I been hit [sic]." "He was asking how long to the hospital and he was saying he was short of breath and that he was going to die. He kept saying that. I didn't know he was shot until he said Bilal shot him when he was chasing us in the car."

Goulbourne then suddenly exclaimed, "There he is!" Chandler turned towards the driver's side window, through which she saw . . . Appellant point a gun in her direction from his position inside of the car. Goulbourne exclaimed, "Pull out, that's who shot me." Chandler sped off; a car chase ensued, during which Chandler ran at least two red lights and nearly collided with a van. Prior to getting to the hospital, Chandler spotted two police cars

_____

3 "Bilal" was a nickname for Appellant.

and pulled up to them. Jordan exited the car and helped to move Goulbourne into the back of one of the police cars. Goulbourne was taken to Temple [U]niversity Hospital, where he was pronounced dead at 11:40 p.m.

Five days after the shooting, Appellant traveled to the Middle East, where he remained for five and one-half years. Appellant was arrested in Amman, Jordan and brought back to the United States by United States Marshals on April 29, 2012.

PCRA Ct. Op., 7/5/22, at 1-2 (record citations & footnote omitted).

Appellant was charged with first-degree murder, carrying a firearm without a license, carrying a firearm on a public street in Philadelphia, possession of an instrument of crime,[4] and REAP. The matter proceeded to a jury trial in the summer of 2013. Appellant's trial counsel was Lawrence S. Krasner, Esquire (Trial Counsel).[5] On August 5, 2013, the jury convicted Appellant of murder, carrying an unlicensed firearm, and REAP.[6] After the verdict was read, Appellant's counsel made an oral motion for judgment of acquittal regarding the carrying an unlicensed firearm charge, which the trial court granted. *See* N.T., 8/5/23, 64-65. That same day, the court sentenced Appellant as follows: (1) a term of life imprisonment without the possibility of parole for the murder conviction; and (2) a concurrent term of nine to 24

_____

[4] *See* 18 Pa.C.S. §§ 6108 and 907(a).

[5] Krasner is currently the District Attorney of the City of Philadelphia.

[6] The remaining charges were *nolle prossed*.

- 3 -

months' incarceration for the REAP conviction. Appellant filed a post-sentence motion, which was denied on December 3, 2013.

Appellant then filed a direct appeal. A panel of this Court affirmed his judgment on sentence on June 16, 2015, and the Pennsylvania Supreme Court denied his petition for allowance of appeal on December 31, 2015. **See Commonwealth v. Tildon**, 3438 EDA 2013 (unpub. memo.) (Pa. Super. June 16, 2015), *appeal denied*, 443 EAL 2015 (Pa. Dec. 31, 2015).

On May 17, 2016, Appellant filed a timely, *pro se* PCRA petition. Thereafter, new counsel, the Defender Association of Philadelphia, entered its appearance. On February 8, 2019, Appellant filed a counseled, amended PCRA petition, raising, *inter alia*, ineffective assistance of counsel claims in terms of **Batson**,[7] **Brady**,[8] prosecutorial misconduct, defective jury instructions,

---

[7] **Batson v. Kentucky**, 476 U.S. 79, 85 (1986) (holding the exclusion of jurors based on race is a violation of the equal protection clause of the United States Constitution).

[8] **Brady v. Maryland**, 373 U.S. 83, 87 (1963) (holding "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution").

***Ross***[9]/speedy trial, and ***Kloiber***[10] instruction challenges.  The Commonwealth

filed a motion to dismiss Appellant's amended PCRA petition on June 21,

2019.[11]

The PCRA court heard argument on March 3, 2020, but did not provide

a decision at the conclusion of the proceeding.  Subsequently, on February 16,

2021, the court issued a Pa.R.Crim.P. 907 notice of intent to dismiss the

petition as meritless.

On March 3, 2021, Appellant filed a witness certification in support of

his amended PCRA petition, which identified Trial Counsel, and indicated he

would proffer the following testimony regarding his defense of Appellant:

> Specifically[,] if [the PCRA court held] a hearing[, Trial Counsel]
> will testify . . . that his theory of defense at trial was both

---

[9] ***Ross v. United States***, 349 F.2d 210, 215 (D.C. Cir. 1965) (holding that in determining whether the Commonwealth has unreasonably delayed the arrest of a suspect after a criminal event, the court must weigh the reasonableness of the delay against the prejudice to the defendant).  ***See also*** Pa.R.Crim.P. 600; ***Barker v. Wingo***, 407 U.S. 514 (1972) (holding whether a delay violated a defendant's right to a speedy trial requires a four-part constitutional analysis); ***Commonwealth v. Martz***, 232 A.3d 801, 812 (Pa. Super. 2020).

[10] ***Commonwealth v. Kloiber***, 106 A.2d 820 (Pa. 1954).  "A ***Kloiber*** instruction informs the jury that an eyewitness identification should be viewed with caution when either the witness did not have the opportunity to view the defendant clearly, equivocated on the identification of the defendant, or has had difficulties identifying the defendant on prior occasions." ***Commonwealth v. Williams***, 255 A.3d 565, 577 n.15 (Pa. Super. 2021) (citation omitted).

[11] During this time, the case was reassigned to the Honorable Tracy Brandeis-Roman, following the retirement of the trial judge, the Honorable Teresa M. Sarmina.

sufficiency of the evidence and self-defense and that he requested a jury instruction on self-defense. He will also testify that he reviewed two documents that PCRA counsel provided him that show that prior to trial the Commonwealth had conducted an investigation that revealed that "[Appellant] shot the victim[ ] because the victim was selling drugs in [his] area" and also concluded that the "shooting was prompted over drug territory[. . . .]" Trial Counsel] will also testify that he has no recollection of receiving these documents any time during his representation of [Appellant] and that these documents support his theory of self-defense. [Trial Counsel] will also testify that he was not made aware that Police Officer [Andre] Daniels was unavailable to testify because he had been fired from the police force due to his guilty plea in federal court for numerous counts of prescription drug fraud.

Appellant's Certification of Witnesses in Support of Amended Petition for Writ of Habeas Corpus and for Collateral Relief from Criminal Conviction Pursuant to the Post Conviction Relief Act, 42 Pa.C.S. § 9541 et seq., 3/3/21, at 1-2 (unpaginated). The Commonwealth filed a response to Appellant's witness certification on April 7, 2021. Thereafter, on May 11, 2021, the PCRA court dismissed Appellant's petition as meritless. This timely appeal followed.[12]

Appellant raises eight issues on appeal:

1. Did the PCRA court err in dismissing the claim that [A]ppellate [C]ounsel were ineffective in failing to raise on appeal the issue that the Commonwealth used its peremptory strikes in a discriminatory manner to strike African Americans on the jury panel, in violation of [Appellant]'s rights to equal protection, due process of law, and a fair trial under the Sixth, Eighth, and Fourteenth Amendments to the United States Constitution?

_____

[12] Following an extension of time, Appellant complied with the PCRA court's directive to file a Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal.

2. Did the PCRA court err in dismissing the claim that the Commonwealth violated **Brady v. Maryland** when it suppressed material evidence favorable to the defense in violation of [Appellant]'s due process rights; specifically, the Commonwealth suppressed the records of its investigation into the decedent's involvement in the drug trade, as well as the fact that Officer Andre Daniels had been fired by the police department and was convicted in federal court on drug and fraud offenses, and that [T]rial [C]ounsel was ineffective in stipulating to Officer Daniels' testimony?

3. Did the PCRA court err in dismissing the claim that the prosecution mischaracterized the evidence in this case and misled the jury by stating that [Appellant] had not given a statement to authorities, and argued consciousness of guilt based upon that false claim, when [Appellant] had in fact given a statement to authorities, and that [T]rial [C]ounsel was ineffective for failing to object to this prosecutorial misconduct and for failing to introduce the statement to rebut the prosecutor's misleading argument?

4. Did the PCRA court err in dismissing the claim that [T]rial [C]ounsel was ineffective for failing to object to the trial court's defective instructions on burden of proof, in that by instructing the jury that their determination of whether the Commonwealth has satisfied its burden of proof should be based solely on the Commonwealth's evidence, and failing to allow or compel consideration of evidence presented by the defense, the instruction violated [Appellant]'s constitutional rights to present a defense, to testify in his own behalf, and to due process?

5. Did the PCRA court err in dismissing the claim that [T]rial [C]ounsel was ineffective for failing to litigate a motion to dismiss the charges due to excessive pre-arrest delay or a violation of the right to a speedy trial, as the delay of more than six years between [Appellant]'s trial and the swearing out of the complaint violated the Sixth Amendment right to a speedy trial and the Fifth and Fourteenth Amendment rights to due process of law?

6. Did the PCRA court err in dismissing the claim that [T]rial [C]ounsel was ineffective for failing to move for judgment of acquittal at the close of the Commonwealth's case where the Commonwealth's evidence did not make out the violation of the Uniform Firearms Act [(the carrying a firearm without a license charge)]?

7. Did the PCRA court err in dismissing the claim that the trial court erred by refusing to give a "**Kloiber** charge" that the witness' identifications should be viewed with caution as to witness Mark Jordan and giving a modified version as to Denise Chandler, and that prior counsel was ineffective for failing to preserve the claim and litigate it on appeal?

8. Did the PCRA court err in dismissing the claim that [Appellant] is entitled to relief from his conviction and sentence because of the cumulative effect of [all] of the errors described in the PCRA petition?

Appellant's Brief at 5-7.

Our standard regarding PCRA appeals is well-settled:

When reviewing the denial of a PCRA petition, an appellate court must determine whether the PCRA court's order is supported by the record and free of legal error. Generally, a reviewing court is bound by a PCRA court's credibility determinations and its fact-finding, so long as those conclusions are supported by the record. However, with regard to a court's legal conclusions, appellate courts apply a *de novo* standard.

**Commonwealth v. Drummond**, 285 A.3d 625, 633 (Pa. 2022) (footnotes & quotation marks omitted).

Because Appellant's claims concern ineffective assistance of counsel, we also are guided by the following:

To prevail on a claim of ineffective assistance of counsel, a PCRA petitioner must satisfy the performance and prejudice test set forth by the United States Supreme Court in **Strickland v. Washington**, 466 U.S. 668, 687 (1984). This Court has recast the two-part **Strickland** standard into a three-part test by dividing the performance element into two distinct components. To prove that counsel was ineffective, the petitioner must demonstrate: (1) that the underlying claim has arguable merit; (2) that no reasonable basis existed for counsel's actions or failure to act; and (3) that the petitioner suffered prejudice as a result of counsel's error. To prove that counsel's chosen strategy lacked a

reasonable basis, a petitioner must prove that an alternative not chosen offered a potential for success substantially greater than the course actually pursued. To satisfy the prejudice prong, a petitioner must demonstrate that there is a reasonable probability that the outcome of the proceedings would have been different but for counsel's action or inaction. Counsel is presumed to be effective; accordingly, to succeed on a claim of ineffectiveness the petitioner must adduce sufficient evidence to overcome this presumption.

*Drummond*, 285 A.3d at 634 (footnotes & quotation marks omitted). We further note: "Failure to satisfy any prong of the test will result in rejection of the appellant's ineffective assistance of counsel claim." *Commonwealth v. McGarry*, 172 A.3d 60, 70 (Pa. Super. 2017) (citation omitted).

After a thorough review of the record, the parties' briefs, the relevant law, and the well-reasoned opinion of the PCRA court, we conclude there is no merit to Appellant's issues, and we affirm on the basis of the court's opinion. *See* PCRA Ct. Op. at 6-32 (finding there was no merit to any of the alleged errors and an evidentiary hearing was not warranted based on the following: (1) Appellant's claim of ineffectiveness regarding a *Batson* challenge was unavailing because (a) Trial Counsel did raise several *Batson* challenges, which the trial court denied relief based on race neutral reasons, including a juror whose brother had been convicted of third-degree homicide and another juror who felt her brother's defense attorney failed to help him by advising him to take a plea agreement;[13] and (b) every reason provided to the trial

---

[13] PCRA Ct. Op. at 11.

- 9 -

court as to why a certain juror was struck was supported by the record and valid where "[t]hese jurors all had circumstances that would lead a reasonable person to believe that they would not have been likely to make a fair determination at Appellant's trial[;]"[14] (2) Appellant's ineffective assistance of counsel assertion regarding the Commonwealth's purported withholding of certain information concerning police investigator, Officer Daniels, and other exculpatory evidence was without merit because Appellant failed to prove that any of the alleged evidence would qualify as *Brady* material where (a) a stipulated statement was admitted into evidence that included statements from the police paperwork of Officer Daniels and another unavailable officer in which both officers indicated that at the time of the shooting, a witness stated that a vehicle approached and an extended arm shot into another car

_____

[14] *See* PCRA Ct. Op. at 12. In reviewing this claim, the PCRA court observed that Appellant did not address Trial Counsel's purported ineffectiveness as to a *Batson* claim in his petition — instead, he focused his allegation that appellate counsel was ineffective — and therefore, the court found this omission was fatal to his argument because he waived his underlying *Batson* claim and any derivative claim of ineffectiveness necessarily fails. *Id.* at 8. The PCRA court acknowledged that Appellant briefly mentioned Trial Counsel's ineffectiveness in terms of a *Batson* claim in his reply brief but pointed out that "[a] claim is waived if it is raised for the first time in a reply brief." *See id.* at 8, *citing **Commonwealth v. Wharton**, 811 A.2d 978, 990 (Pa. 2002). We find this conclusion is erroneous as the cited case was referencing an appellate reply brief. ***See id.*** at 990; ***see also Commonwealth v. Basemore***, 744 A.2d 717, 726-27 (Pa. 2000) ("A reply brief, however, is an inappropriate means for presenting a new and substantively different issue than that addressed in the original brief."). Nevertheless, because the PCRA court addressed the merits of the claim, this error is harmless.

containing the victim but the witness could not identify the shooter,[15] (b) evidence of Officer Daniels' federal indictment and subsequent plea were public records and therefore, the defense would have been put on notice that he was not going to testify, it was debatable if the evidence could have been used as impeachment evidence because it was not clear that this was prosecutorial evidence since Appellant wanted the stipulated statement read to the jury, and his claim that the outcome of the trial would have been different was questionable since the relief he is now seeking would have precluded evidence favorable to his defense at trial, (c) evidence of a broader police investigation into a drug turf war would have gone against Appellant's own trial strategy since he previously attempted to preclude this same kind evidence "along with speculation that the testing of [the victim's] clothing was motivated by a theory that [the victim] too had fired a weapon[;]"[16] (3) with respect to Appellant's claim that Trial Counsel was ineffective for failing to object to purported prosecutorial misconduct during closing arguments, the underlying issue was previously litigated on direct appeal[17] and therefore,

---

[15] The only difference between Officer Daniels' and the officer's statements was that Officer Daniels described the vehicle as a silver car while the other officer said it was a gray Honda.

[16] PCRA Ct. Op. at 16.

[17] The panel concluded the trial court did not err in denying relief where the Commonwealth's comments were in "fair response" to Trial Counsel's reference to the absence of any statement from Appellant, and any resulting
*(Footnote Continued Next Page)*

Appellant failed to establish counsel was ineffective since counsel did object to the statement and appealed the issue; (4) Appellant's issue that Trial Counsel was ineffective for failing to object to an allegedly flawed jury instruction was meritless where the court utilized the relevant model jury instruction and may have omitted the word, "Commonwealth," prior to the word, "evidence," but still stated that it was the Commonwealth's burden to prove each element of the crimes at issue which did not materially change the burden of proof requirement, and allowed the jury to consider evidence that benefitted Appellant (including Appellant's evidence that he did not flee to Yemen to avoid prosecution but rather to learn about his faith); (5) Appellant's claim that Trial Counsel was ineffective for failing to litigate a **Ross**/speedy trial motion was unavailing because pursuant to **Commonwealth v. DeBlase**, 665 A.2d 427 (Pa. 1995),[18] he was required to present Rule 600 analysis but failed to do so (most likely because he fled to a foreign country for more than five years), and therefore, the court could not proceed to the next step in the two-step **Barker** balancing test; (6) Appellant's issue that Trial Counsel was ineffective for failing to file a motion for judgment of

_____

prejudice was negated by the court's curative instructions. **See Dixon-Tildon**, 3438 EDA 2013 (unpub. memo. at 4-9).

[18] **DeBlase** discussed Rule 600's predecessor, Pennsylvania Rule of Criminal Procedure 1100. **See** Pa.R.Crim.P 1100 (superseded). Effective April 1, 2001, Pa.R.Crim.P. 1100 was renumbered as Rule 600.

acquittal for the carrying a firearm without a license charge prior to the conclusion of trial was meritless where (a) the claim lacked arguable merit because the law does not support the notion that there was insufficient evidence, considering the victim's cause of death, (b) there was a reasonable basis for Trial Counsel's action or inaction because if counsel had moved for an acquittal, "the Commonwealth would have likely asked to reopen the case to present evidence of the [gun's] barrel length"[19] and counsel would not want the jury to hear more testimony about the murder weapon, and (c) Appellant did not suffer any prejudice where the carrying an unlicensed firearm charge was subsequently dismissed and the crux of the case was the identity of the shooter, so the length of the barrel would not have affected the conviction; (7) Appellant's claim that Trial Counsel was ineffective for not requesting a **Kloiber** charge regarding one witness, Jordan, and for not objecting to the charge being modified with respect to another witness, Chandler, was meritless as counsel did request **Kloiber** charges regarding both witnesses and the trial court rejected one request based upon the view that it did not apply to Jordan since he did not make an in-court identification of Appellant and permitted a modified **Kloiber** charge as to Chandler, which included certain adjustments requested by Appellant; and (8) Appellant failed to meet his burden of proving that more than one error occurred and therefore, he

---

[19] **See** PCRA Ct. Op. at 29.

cannot establish he was prejudiced due to cumulative errors.).  Accordingly, we do not disturb the PCRA court's determinations as Appellant's arguments are unavailing.

We direct that a copy of the PCRA court's July 5, 2022, opinion be filed along with this memorandum and attached to any future filings of the memorandum in this case.

Order affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 11/7/2023

IN THE COURT OF COMMON PLEAS OF PHILADELPHIA COUNTY
CRIMINAL TRIAL DIVISION

COMMONWEALTH            :       CP-51-CR-0008638-2012

                                :

v.                   :       1126 EDA 2021

                                  :

TYRON DIXON-TILDON       :

FILED

JUL 0 5 2022

Appeals/Post Trial
Office of Judicial Records

## OPINION

Brandeis-Roman, J.                                           July 5, 2022

Appellant Tyron Dixon-Tildon has filed an appeal from this court's Order dismissing his petition which sought relief pursuant to the Post-Conviction Relief Act, 42 Pa.C.S. § 9541 *et seq.*, Appellant's second PCRA Petition.

### PROCEDURAL HISTORY AND FACTS

On the evening of October 6, 2006, Denise Chandler drove to the intersection of N. Cleveland Street and W. Cumberland Street, intending to purchase a bag of heroin from Mark Jordan. Chandler arrived at the intersection and found Jordan standing outside of a bar. Chandler drove to Jordan, asked if he was carrying heroin, and invited him to the car. Once Jordan entered the car, Chandler parked on the corner of Cleveland and Cumberland Streets.

As Chandler gave Jordan money for the drugs, gunshots rang out. Chandler attempted to pull out from her parking spot, but Appellant crossed in front of her car on foot with a black revolver in his hand, forcing Chandler to wait until he entered the car in front of her. Jordan looked down Cleveland Street and saw "a lot of people running, but [the Appellant] was the only one

1

coming down Cleveland. They was all running away from where Bilal was. He ran right past the car and he looked right at me when I was in the car."

After the Appellant stepped into that car, Chandler forced her way into the front of Appellant, honking her horn and speeding out of her parking spot onto York Street. Suddenly, Jordan exclaimed "Stop, stop, that's my boy." Chandler stopped the car; Donnell Goulbourne ran up to Chandler's car yelling, "Let me get in, let me get in, they shootin!" Chandler let Goulbourne into her car. Upon entering, Goulbourne said, "I been hit [sic]." "He was asking how long to the hospital and he was saying he was short of breath and that he was going to die. He kept saying that. I didn't know he was shot until he said Bilal shot him when he was chasing us in the car."

Goulbourne then suddenly exclaimed, "There he is!" Chandler turned towards the driver's side window, through which she saw the Appellant point a gun in her direction from his position inside of the car. Goulbourne exclaimed, "Pull out, that's who shot me." Chandler sped off; a car chase ensued, during which Chandler ran at least two red lights and nearly collided with a van. Prior to getting to the hospital, Chandler spotted two police cars and pulled up to them. Jordan exited the car and helped to move Goulbourne into the back of one of the police cars. Goulbourne was taken to Temple university Hospital, where he was pronounced dead at 11:40 p.m. *Trial Court Opinion, 6/3/2014, at 1-3.*[1]

Five days after the shooting, Appellant traveled to the Middle East, where he remained for five and one-half years. N.T., 7/31/13, at 225. Appellant was arrested in Amman, Jordan and brought back to the United States by United States Marshals on April 29, 2012.

The jury found Appellant guilty of the aforementioned crimes, and he was sentenced on August 5, 2013. The following day, Appellant filed a post-sentence motion, which was denied by

---

[1] This court relied on the facts as stated in Judge Sarmina's June 3, 2014 Opinion.

2

the trial court. A timely appeal followed. On June 16, 2015, the Pennsylvania Superior Court affirmed his conviction. On December 31, 2015, the Pennsylvania Supreme Court denied allocatur. The sentence became final on March 1, 2016. On May 17, 2016, Appellant filed his first, timely *pro se* PCRA Petition. The Defender Association of Philadelphia filed an Amended PCRA Petition on February 8, 2019.

On November 15, 2020, the parties engaged in extensive oral argument so the court could determine whether an evidentiary hearing was warranted. On February 16, 2021, this court filed a 907 Notice of Dismissal. On March 3, 2021, Appellant filed a Supplemental PCRA Petition to which the Commonwealth chose not to reply. This court assigned a new court date so that it could thoroughly review Appellant's Supplemental PCRA Petition. On May 11, 2021, the court formally dismissed Appellant's PCRA Petition as meritless. On June 1, 2021, Appellant filed his Notice of Appeal to the Pennsylvania Superior Court. On June 1, 2022, Appellant filed his Statement of Matters Complained of on Appeal.

This opinion follows.

## ISSUES RAISED BY APPELLANT ON APPEAL[2]

I.      On June 1, 2021, this timely appeal was filed by the defendant from the order dismissing his PCRA petition on May 11, 2021. On June 7, 2021, this Court issued an order pursuant to Pa.R.A.P. 1925(b) for counsel to file a Statement of Errors on or before June 28, 2021. On June 23, 2021, this Court, pursuant to a petition by counsel, ordered that the deadline for filing the statement of errors was extended to within twenty-one days of counsel receiving all of the missing notes of testimony.

II.     Two transcripts that had been ordered by counsel were missing as of the time the petition was filed to extend the deadline. One of them, the transcript for April 6, 2021, is now in counsel's possession. The other transcript that had been ordered but not received was for November 12, 2020. On May 12, 2022, counsel was informed by Thomas Campbell, a supervisor with the Court Reporter Administration, that the stenographer for this Court on November 12, 2020 was out of work on medical leave, but that he had received her records. According to the stenographer's records,

---

[2] It appears as though the first two "issues" listed are Appellant's recitation of the process taken to acquire the missing notes of testimony and are not actual issues raised on appeal, but rather an explanation for why Appellant's 1925(b) statement was not filed sooner.

3

on November 12, 2020, the case was simply continued and there was no argument or testimony; therefore, there was no transcript to create. As of May 12, 2022, there are no further outstanding transcripts. This timely statement of errors follows.

III. Counsel has reviewed the available record and asserts the following errors to be complained of on appeal:

a. At trial, the Commonwealth used its peremptory strikes in a discriminatory manner to strike African Americans on the jury panel, in violation of petitioner's rights to equal protection, due process of law, and a fair trial under the Sixth, Eighth, and Fourteenth Amendments to the United States Constitution; appellate counsel was ineffective for failing to raise this issue on appeal. The PCRA Court erred in denying relief on this claim without a hearing.

b. The Commonwealth violated Brady v. Maryland when it suppressed material evidence favorable to the defense in violation of petitioner's due process rights; specifically, the Commonwealth suppressed the records of its investigation into the decedent's involvement in the drug trade, as well as the fact that Officer Andre Daniels had been fired by the police department and was convicted in federal court on drug and fraud offenses. Trial counsel was ineffective for stipulating to the testimony of Officer Daniels. The PCRA Court erred in denying relief on this claim without a hearing.

c. The prosecution mischaracterized the evidence in this case and misled the jury by stating that petitioner had not given a statement to authorities, and argued consciousness of guilt based upon that false claim, when petitioner had in fact given a statement to authorities. Trial counsel was ineffective for failing to object to this prosecutorial misconduct and for failing to introduce the statement to rebut the prosecutor's misleading argument. The PCRA Court erred in denying relief on this claim without a hearing.

d. Petitioner's constitutional rights were violated by the trial court's defective instructions on burden of proof. By instructing the jury that their determination of whether the Commonwealth has satisfied its burden of proof should be based solely on the Commonwealth's evidence, and failing to allow or compel consideration of evidence presented by the defense, the instruction violated Petitioner's constitutional rights to present a defense, to testify in his own behalf, and to due process. Trial counsel were ineffective for failing to object to the instruction. The PCRA Court erred in denying relief on this claim without a hearing.

e. Trial counsel was ineffective for failing to litigate a motion to dismiss the charges due to excessive pre-arrest delay or a violation of the right to a speedy trial. The delay of more than six years between Petitioner's trial and the swearing out of the complaint violated the Sixth Amendment right to a speedy trial and the Fifth and Fourteenth Amendment rights to due process of law. The PCRA Court erred in denying relief on this claim without a hearing.

f. Trial counsel was ineffective for failing to move for judgment of acquittal at the close of the Commonwealth's case where the Commonwealth's evidence did not make out the violation of the Uniform Firearms Act. The PCRA Court erred in denying relief on this claim without a hearing.

g. The trial court erred by refusing to give a "Kloiber charge" that the witness'

4

identifications should be viewed with caution (see Commonwealth v. Kloiber, 106 A.2d 820 (Pa. 1954)) as to witness Mark Jordan and giving a modified version as to Denise Chandler. To the extent that trial counsel failed to object and failed to preserve this issue on direct appeal they were ineffective. The PCRA Court erred in denying relief on this claim without a hearing.

h. The trial court erred in denying the PCRA petition without a hearing on the claim that Petitioner is entitled to relief from his conviction and sentence because of the cumulative effect of al of the errors described in the PCRA petition.

## DISCUSSION

"It is well-settled that the PCRA is intended to be the sole means of achieving post-conviction relief." Commonwealth v. Taylor, 2013 PA Super 89, 65 A.3d 462, 465 (Pa.Super. 2013) (citing Commonwealth v. Haun, 613 Pa. 97, 32 A.3d 697 (Pa. 2011)). When reviewing the denial of PCRA relief, the appellate court's review is "limited to determining whether the PCRA court's findings are supported by the record and without legal error". Commonwealth v. Edmiston, 619 Pa. 549, 65 A.3d 339, 345 (Pa. 2013) (citing Commonwealth v. Breakiron, 566 Pa. 323, 781 A.2d 94, 97 n. 4 (Pa. 2001)). The court's scope of review is limited to the findings of the PCRA court and the evidence on the record of the PCRA court's hearing, viewed in light most favorable to the prevailing party. Commonwealth v. Fahy, 598 Pa. 584, 959 A.2d 312, 316 (Pa. 2008) (citing Commonwealth v. Duffey, 585 Pa. 493, 889 A.2d 56, 61 (Pa. 2005)). The burden is on the petitioner in the PCRA petition to demonstrate by a preponderance of the evidence that he or she is eligible for PCRA relief. 42 Pa.C.S.A. § 9543.

1) **APPELLANT'S REPRESENTATION OF THE PROCEDURAL HISTORY IS ACCURATE.**

No further discussion or analysis is needed.

2) **APPELLANT'S REPRESENTATION OF THE PROCEDURAL HISTORY IS ACCURATE.**

No further discussion or analysis is needed.

5

## 3) APPELLANT FAILED TO PROVE ANY OF THE ALLEGED ERRORS HAD MERIT OR WARRANTED AN EVIDENTIARY HEARING.

Appellant raises numerous issues on appeal, each of which is meritless. Appellant raises various issues from trial court error, trial counsel error, and misconduct on behalf of the Commonwealth, all of which are couched in terms of ineffective assistance of counsel. Appellant fails to prove any of these issues. Some of these issues are clearly contradicted by the record. So as to avoid unnecessary repetition of applicable law, this court will herein provide the standards for ineffective assistance of counsel prior to analyzing each issue.

Although this standard first applied to an attorney's performance in capital punishment cases, Strickland set the standard of a defendant showing that their attorney provided ineffective assistance: "First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Strickland v. Washington, 466 U.S. 668, 687 (1984).

Pennsylvania has long since adopted the Strickland test. "In Pennsylvania, we have applied the *Strickland* test by looking to three elements. Thus, in order to succeed on a claim of ineffectiveness, the petitioner must establish that: (1) the underlying claim has arguable merit; (2) no reasonable basis existed for counsel's actions or failure to act; and (3) petitioner suffered prejudice as a result of counsel's error such that there is a reasonable probability that the result of the proceeding would have been different absent such error." Commonwealth v. Lesko, 15 A.3d 345, 373 (Pa. 2011).

6

"A failure to satisfy any prong of the test for ineffectiveness will require rejection of the claim." Commonwealth v. Fulton, 830 A.2d 567, 572 (Pa. 2003).

"Prejudice in the context of ineffective assistance of counsel means demonstrating that there is a reasonable probability that, but for counsel's error, the outcome of the proceeding would have been different." Commonwealth v. Bond, 819 A.2d 33, 42 (Pa. 2002).

### a. TRIAL COUNSEL CANNOT BE HELD INEFFECTIVE FOR DECLINING TO APPEAL A MERITLESS BATSON ISSUE.

Appellant alleges that trial counsel was ineffective for failing to raise Batson issues on direct appeal. Specifically, Appellant points out that six of the seven preemptory strikes by the Commonwealth were against African-American jurors.

"The standards for assessing a prima facie case in the context of discriminatory selection of the venire have been fully articulated since *Swain.* See *Castaneda v. Partida, supra,* 430 U.S., at 494-495, 97 S.Ct., at 1280; *Washington v. Davis,* 426 U.S., at 241-242, 96 S.Ct., at 2048-2049; *Alexander v. Louisiana, supra,* 405 U.S., at 629-631, 92 S.Ct., at 1224-1226. These principles support our conclusion that a defendant may establish a prima facie case of purposeful discrimination in selection of the petit jury solely on evidence concerning the prosecutor's exercise of peremptory challenges at the defendant's trial. To establish such a case, the defendant first must show that he is a member of a cognizable racial group, *Castaneda v. Partida, supra,* 430 U.S., at 494, 97 S.Ct., at 1280, and that the prosecutor has exercised peremptory challenges to remove from the venire members of the defendant's race. Second, the defendant is entitled to rely on the fact, as to which there can be no dispute, that peremptory challenges constitute a jury selection practice that permits "those to discriminate who are of a mind to discriminate." *Avery v. Georgia,* 345 U.S., at 562, 73 S.Ct., at 892. Finally, the defendant must show that these facts and any other relevant circumstances raise an inference that the prosecutor used that practice to exclude

7

the veniremen from the petit jury on account of their race. This combination of factors in the empaneling of the petit jury, as in the selection of the venire, raises the necessary inference of purposeful discrimination." <u>Batson v. Kentucky</u>, 476 U.S. 79, 96, 106 S. Ct. 1712, 1723, 90 L. Ed. 2d 69 (1986), <u>holding modified by</u> <u>Powers v. Ohio</u>, 499 U.S. 400, 111 S. Ct. 1364, 113 L. Ed. 2d 411 (1991).

"[I]n order to succeed on an unpreserved claim of racial discrimination in jury selection ... a post-conviction petitioner may not rely on a *prima facie* case under *Batson*, but must prove actual, purposeful discrimination by a preponderance of the evidence **in addition to all other requirements essential to overcome the waiver of the underlying claim.**" *Commonwealth v. Uderra*, 580 Pa. 492, 862 A.2d 74, 87 (2004) (emphasis added) (citation omitted). A claim is waived if it is raised for the first time in a reply brief. *Commonwealth v. Wharton*, 571 Pa. 85, 811 A.2d 978, 990 (2002). "[T]he mere incantation of the magic words of counsel ineffectiveness is insufficient to overcome waiver." *Commonwealth v. Washington*, 592 Pa. 698, 927 A.2d 586, 609 (2007). Appellant does not dispute that trial counsel could have raised a *Batson* claim at trial. Therefore, appellant's failure to address trial counsel's ineffectiveness in his initial brief is fatal to his claim. Even if appellant could cure such failure by inserting a previously absent claim of trial counsel ineffectiveness in his reply brief (which he cannot), appellant's boilerplate recitation in his reply brief of the three prongs of the test for ineffective assistance of trial counsel falls far short of the requisite developed arguments that trial counsel lacked a reasonable basis for failing to raise a *Batson* claim at trial and that counsel's failure in this regard resulted in prejudice to appellant's case. Because appellant's underlying *Batson* claim is waived, his derivative claim of ineffective

8

assistance of direct appeal counsel necessarily fails." <u>Commonwealth v. Collins</u>, 957 A.2d 237, 259 (Pa. 2008).[3]

The African-American jurors at the center of Appellant's <u>Batson</u> issue are jurors #22, #28, #36, #37, #38, and #44. Trial counsel did not initially raise <u>Batson</u> challenges when the Commonwealth struck jurors #22 and #28, instead waiting for the Commonwealth to strike juror #36. At this time, trial counsel raised <u>Batson</u> challenges in regard to all three jurors, stating that there was an established pattern due to the Commonwealth striking all three African-Americans as perspective jurors. *N.T. Voir Dire, July 29, 2013, page 137 line 3 through page 138 line 25.* In response, the Commonwealth stated that they rejected juror #22 because her brother had been convicted of armed robbery; they struck juror #28 because his brother had been convicted of third-degree homicide; and they struck juror #36 because her cousin had been killed by a cop, an act she described as a "murder" and that she viewed that police officer as "just doing his job." *N.T. Voir Dire, July 29, 2013, page 133 lines 4-21, page 139 line 5 through page 142 line 12.* Judge Sarmina accepted these reasons as "extremely valid" and denied trial counsel's <u>Batson</u> challenge at that time. Appellant alleges that Judge Sarmina had doubts about the Commonwealth's reasons, but read in context, it appears as though Judge Sarmina was referencing her history with the prosecutor as opposed to these particular strikes.

> Well, I think those are extremely valid reasons and therefore your <u>Batson</u> motion is denied, but I'll tell you there have always been at least one or two of yours which I have a little question in my head, but not to the point where I was ready to inquire as to your facially neutral reasons.
> *N.T. Voir Dire, July 29, 2013 page 142 lines 5-12.*

---

[3] Arguably, this higher standard does not apply. This is because the issue regarding the <u>Batson</u> challenges was addressed during Appellant's trial where Judge Sarmina had the opportunity to conduct direct review of the issue. Because this issue was not appealed, it can be argued that any ineffective assistance was not that of trial counsel but, rather, that of appellate counsel, although they were one in the same attorney. As a result, this higher burden likely does not apply.

9

The Commonwealth then went on to strike jurors #37, #38, and #44, all of whom were African-American. The record clearly reflects that juror #38 was struck due to some undiagnosed physical or mental issue, something that was made clear when he stated that he was confused by the question "do you have a physical or psychological disability that might interfere with or prevent you from serving as a juror."[4] *N.T. Voir Dire, July 29, 2013, page 148 line 11 through page 156 line 6.* Of particular significance, Juror #38 was described as having provided inarticulate responses during *voir dire* and that he clearly seemed to be impaired. Juror #44 stated that her brother had been arrested for rape and believed that his lawyer did nothing for her brother because the lawyer told her brother that "if he don't take the plea, they will give him more time, so they didn't really prove his case." *N.T. Voir Dire, July 29, 2013, page 167 line 20 through page 170 line 9.* It is clear, even from a cursory review of the record, that Juror #38 was struck due to having some mental deficiencies and Juror #44 was struck due to what happened with her brother.

However, Juror #37 is not so easily dismissed. It is not clear from the record why this juror was struck. She was a former corrections officer and provided no responses that would provide a clear indication as to why this juror was struck. She was struck immediately following the first Batson challenge raised by trial counsel and Judge Sarmina indicated that those prior strikes were for "extremely valid reasons." After Juror #37 was struck, trial counsel renewed his Batson challenge although Judge Sarmina stated that she did not see a prima facie case at that point so there was no requirement to provide a race-neutral reason for the strike. Under Batson, it is clear that the exclusion of even a single venire person on the basis of race violates the equal protection clause of the Fourteenth Amendment. However, it must also be stated that Batson does not require

---

[4] Juror #38 vehemently denied having anything wrong with him, and the record does not reflect what was affecting Juror #39. However, it is clear from the record that Juror #38 had something affecting his mental comprehension as he stated that he had been confused by simple yes or no questions and had to correct every answer on his juror questionnaire.

10

a full investigation into every juror struck. Instead, inquiries are required once a *prima facie* case of purposeful discrimination has been established. This court is unaware of any law indicating that once a *prima facie* case has been established, every subsequent strike is *per se* part of that *prima facie* case. Given that the determination of whether a *prima facie* case exists involves the totality of the circumstances, the circumstances have now changed in regard to the pattern since the court found "extremely valid" reasons for the first three strikes. Absent a showing of case law that once a *prima facie* case has been established, every subsequent strike of a juror in that class raises a *prima facie* showing requiring race neutral reasons on the record, Appellant cannot satisfy his burden of proof.

It cannot be ignored that the Pennsylvania Supreme Court has recognized that even a single preemptory challenge exercised with discriminatory intent is misconduct that warrants a new trial. Commonwealth v. Edwards, No. 6 EAP 2021, 2022 WL 1087179, at *17 (Pa. Apr. 12, 2022). However, there is a clear distinction between Edwards and Appellant's own matter. In Edwards, the prosecutor provided a reason for one of the preemptory strikes that the Pennsylvania Superior Court found to be pretextual. Specifically:

> "In reversing the trial court's ruling, the Superior Court concluded that the record did not support the trial court's finding of no purposeful discrimination in relation to Juror 67 because: (1) the jurors' race and gender were listed on the jury strike sheet; (2) the probability of the Commonwealth striking such a disproportionate number of African Americans by chance was low; and, (3) the prosecutor's explanation for striking Juror 67 was "wholly unpersuasive," as the prosecutor indicated that she struck the juror due to her inattentiveness to the proceedings as demonstrated by her leaning back in a cavalier manner, after the trial court had instructed the venire to "sit back and relax." *Edwards*, 177 A.3d at 976 (citing N.T., 10/28/2014, at 4)."
> *Commonwealth v. Edwards, No. 6 EAP 2021, 2022 WL 1087179, at *16 (Pa. Apr. 12, 2022).*

11

As can be clearly seen, the explanation preemptory strike in Edwards was found to have been insufficient, primarily due to how the Commonwealth explained that they struck the juror "due to her inattentiveness" despite the fact that "the trial court had instructed the venire to 'sit back and relax'." Because the record did not support either this strike or the decision to uphold the strike, the Pennsylvania Superior Court reversed the ruling regarding that preemptory strike.

Appellant's own matter is quite different. During Appellant's trial, every reason provided to the court as to why a juror was struck was supported by the record and valid. This court did not simply rely on the rationale provided by ADA Fairman or relied upon by Judge Sarmina, but instead conducted its own analysis. This court can perfectly understand why the Commonwealth would strike a juror whose brother had been convicted of armed robbery, a juror whose brother had been convicted of third-degree homicide, a juror whose brother had been killed by a police officer, a juror with apparent mental health issues, and a juror who felt her brother's defense attorney failed to help him by advising him to take a plea agreement. These jurors all had circumstances that would lead a reasonable person to believe that they would not have been likely to make a fair determination at Appellant's trial.

Finally, the evidence at Appellant's trial cannot be ignored. At trial, the Commonwealth presented testimony from Detective Donald Marano, Detective Howard Peterman, Detective Steven Mostovyk, as well as eyewitnesses Denise Chandler and Mark Jordan, both of whom identified Appellant as "Bilal" and also as the shooter.[5] The Commonwealth also presented a police interview with Mark Jordan, Denise Chandler's statement, an autopsy report of the victim testified to by expert witness Dr. Gary Collins, a firearms report testified to by expert witness Kenneth Lay,

---

[5] The record reveals that at one point, Mark Jordan pointed out the victim, Donnell Goulbourne, to Denise Chandler and asked her to let him in the car with them. Once Goulbourne was in the vehicle, Appellant appeared at the side of Ms. Chandler's vehicle, at which point Goulbourne also identified Appellant.

12

a certificate-of-nonlicensure for Appellant, and testimony from U.S. Marshal Daniel Donnelly regarding his retrieval of Appellant from Yemen. The Commonwealth's evidence at trial was overwhelming, and even if it could be determined that this underlying issue had merit and that trial counsel had no reasonable basis for not raising the Batson issue on direct appeal, Appellant fails to meet the third prong of the test for ineffective assistance of counsel laid out in Lesko. Based on Fulton, Appellant's failure to satisfy all three prongs of the Lesko test require rejection of Appellant's claim.

Therefore, Appellant's ineffective assistance of counsel claim with regard to the Batson challenge issue is meritless.

### b. THE EVIDENCE REGARDING OFFICER ANDRE DANIELS WAS PUBLIC RECORD, NOT EXCULPATORY, AND WOULD NOT HAVE CHANGED THE OUTCOME OF APPELLANT'S TRIAL.

Appellant alleges that, although pre-trial discovery was generally provided by the Commonwealth, some information and evidence was omitted. Particularly, Appellant alleges that the Commonwealth withheld information regarding Officer Andre Daniels and other exculpatory evidence. These issues are meritless. Appellant has not proven that any of this alleged evidence would qualify as Brady material.

"A *Brady* violation comprises three elements: 1) suppression by the prosecution 2) of evidence, whether exculpatory or impeaching, favorable to the defendant, 3) to the prejudice of the defendant." Commonwealth v. Paddy, 800 A.2d 294, 305 (Pa. 2002).

Regarding Officer Daniels, Appellant failed to satisfy any of the three requirements in proving the Commonwealth committed a Brady violation. Officer Daniels and Officer Wilkins took a statement from Mark Jordan at the hospital. *N.T. July 30, 2013, page 196 lines 17-19*. Both officers relayed to a detective what was said in his statement. Officer Wilkins was at trial and

prepared to testify for the first four days of trial. However, he was unavailable for the final day. The transcripts made clear that Daniels was no longer with the force and would not testify. An agreement was reached wherein statements in the police paperwork by both officers would be read into evidence, including allowing the defense to read into evidence the interview of Daniels relating to the statement of the witness. The Commonwealth argues that it was the defense that asked Officer Daniels' statement to be read to the jury as a condition for stipulating to the statement by Officer Wilkins. Both officers indicated that the witness stated that a vehicle approached and an extended arm shot into the vehicle containing Decedent. Both officers indicated that the witness stated he could not identify the shooter. The only difference between the two officers' statements was that Officer Wilkins described the vehicle as a gray Honda whereas Officer Daniels described it as a silver car. According to the Commonwealth, it was the defense that wanted Officer Daniels' testimony read into evidence and the closing largely pointed to both officers' reports indicating that the witness could not identify the shooter, contrary to trial testimony.

It is undisputed that Officer Daniels pled guilty to forging prescription medications between the time of the incident and the time of trial. However, Appellant cannot use the information about Officer Daniels to satisfy any of the requirements under Brady. Unlike most incidents regarding police misconduct that consist primarily of private internal investigations, the federal indictment and subsequent plea of Officer Daniels were public records. Further, the fact that the officer was not testifying would have been abundantly clear and would have put defense counsel on notice.

The second requirement, that the evidence be either exculpatory or impeaches prosecution evidence has also not been met. It is debatable if this evidence could have or would have been used as impeachment evidence. Although *crimen falsi* can certainly be used for impeachment purposes,

14

it is not clear that this was actually prosecution evidence. According to the Commonwealth, it was the Appellant that wanted this statement read to the jury. The statement indicated that the witness provided a vague description of the vehicle from which shots were fired while also making clear that the witness could not identify the shooter. Since this lack of witness identification was helpful to Appellant and was entered into evidence in exchange for stipulating to the statement by the other officer, defining this as "prosecution evidence" is highly dubious.

The third requirement is that the result of trial would have been different if Appellant had this evidence. The statement at issue called into question how descriptive the witness's original statement was in regard to the vehicle and reinforced the fact that the witness said he could not identify the shooter. This was helpful to Appellant's defense at trial and was entered into evidence in exchange for stipulating to the statement by the other officer. Appellant now appears to be arguing that, had he known about Officer Daniels, he would have attempted to preclude evidence favorable to his defense from coming in at trial. Appellant's argument fails to show how this change in tactic would have resulted in a different result at trial. Based on this, Appellant's Brady claim regarding Officer Daniels must fail. Accordingly, Appellant's Brady claim regarding Officer Daniels is meritless.

Appellant alleges that there was also other evidence that was not passed during discovery in violation of Brady. Appellant alleges that this evidence would have supported the trial theory of a drug war in which Appellant acted in self-defense. Based on the available record, it appears as though Appellant is now arguing against his own trial strategy.

Appellant alleges that the Commonwealth's investigation into the incident in question revealed that the shooting was part of a drug war in which the decedent was selling drugs in Appellant's territory. Appellant also alleges that the decedent's clothing was tested for gun residue,

which would have supported his self-defense claim by showing that Decedent had shot at Appellant.

On July 29, 2013, the Commonwealth filed a 404(b) Motion in an attempt to introduce evidence that the shooting was over drugs. Appellant opposed this motion because he did not want the jury to hear about his prior record. Based upon the decedent's dying declaration, it was abundantly clear to the jury that the shooting was over drugs. Regarding the gun residue test related to the decedent, there is no new evidence that was withheld. Currently, there are no results from the gun residue tests, and there were no results of the gun residue test at the time of trial. Appellant alleges that decedent also fired a gun which prompted the investigators to test the clothing and that the test results were just not provided to Appellant or his trial counsel. It appears that Appellant's present attorney bases this upon an interpretation of Appellant's statement from the extradition hearing. Appellant claims it was part of a broader investigation into drug dealing including determining whether Decedent fired a gun, both of which the Commonwealth denies.

It is questionable whether either of these allegations involve the Commonwealth's suppression of evidence pursuant to Brady. Instead, Appellant theorizes that a broader investigation occurred and introducing this would have supported a self-defense claim. However, this "evidence" is limited to statements supporting the claim that this case was about a drug turf war, which Appellant attempted to preclude from trial, along with speculation that the testing of Decedent's clothing was motivated by a theory that Decedent too had fired a weapon. Both of these alleged pieces of Brady information fall short of having been "suppressed" evidence under prong one of Brady. It was already known that the shooting involved drugs in some manner. *N.T. July 29, 2013, page 12 lines 4-16, page 18 line 20 through page 20 line 16, page 31 lines 9-22; N.T. July 30, 2013, page 137 line 5 through page 138 line 18; N.T. July 31, 2013, page 98 line 2*

16

*through page 100 line 11; N.T. August 1, 2013, page 135 line 8 through page 136 line 21; N.T. August 2, 2013, page 74 lines 12-25.* Trial counsel cross-examined both Detective Steven Mostovyk and Kenneth Lay from the Philadelphia Police Office Forensic Science, Firearms Identification Unit, regarding Appellant's clothing being tested. *N.T. August 1, 2013, page 288 line 17 through page 296 line 20; N.T. August 2, 2013, page 223 lines 18-25.* Appellant surmises that there was an alternative theory for testing the clothing which was withheld and would have helped Appellant. This is meritless.

As to the remaining requirements of Brady, they also fail. Neither piece of "evidence" is exculpatory or tends to impeach, although Appellant would likely claim he could impeach the Commonwealth witnesses about alternative theories for testing the clothing. However, this is more consistent with counsel reviewing the case after conviction and developing new theories. An Appellant cannot attempt to present an alternative theory simply because the original was not accepted by the jury. The third prong of Brady would require a showing that this "evidence" would have made a difference at trial. Trial counsel attempted to do his best to ensure that evidence of Appellant's history of selling drugs was limited at trial. Focusing more on Appellant's motive to kill Decedent would not have helped Appellant at trial and instead would have either made no difference or would have further highlighted Appellant's guilt to the jury.

Therefore, Appellant's Brady claim regarding this other evidence is meritless.

### c. THE ISSUE REGARDING APPELLANT'S STATEMENT WAS BOTH PREVIOUSLY LITIGATED AND NOT MISCHARACTERIZED BY THE COMMONWEALTH AT TRIAL.

Appellant alleges that trial counsel failed to object to prosecutorial misconduct during closing arguments. Specifically, Appellant claims that the Commonwealth mischaracterized evidence regarding any alleged statements by Appellant.

17

"To be eligible for relief under this subchapter, the petitioner must plead and prove by a preponderance of the evidence all of the following . . . that the allegation of error has not been previously litigated or waived." 42 Pa.C.S. § 9543(a)(3).

"For purposes of this subchapter, an issue has been previously litigated if . . . the highest appellate court in which the petitioner could have had review as a matter of right has ruled on the merits of the issue." 42 Pa.C.S. § 9544(a)(2).

"[A]n issue is not cognizable under the PCRA where the petitioner simply attempts to relitigate, without couching in terms of ineffective assistance, a claim that has already been deemed reviewed on direct appeal." Commonwealth v. Fowler, 930 A.2d 586, 594 (Pa.Super. 2007).

Immediately, it cannot be ignored that this is technically a different issue as Appellant has couched a previously litigated issue in terms of ineffective assistance of counsel. However, to the extent that this is technically a new issue, not only does the prior analysis from the Pennsylvania Superior Court still apply but it also disproves Appellant's current ineffective assistance claim.

> "Appellant first argues that the Commonwealth improperly commented on his post-arrest silence and decision not to testify at his criminal proceeding. The Commonwealth counters that its argument was fair response to the following remarks made by Appellant's counsel in his own summation:
>
> Defense: Now, what is this evidence? Well, first of all, let's look the way we look at any other case at what sort of evidence there is that exist. Are there statements by the defendant? Well, the answer to that I think is yes and no. There is no confession of any sort by the defendant. There is no statement from the marshal he told me on the plane or he did this or did that, there's nothing like that. We do have information that there was a written document that he executed that was provided to the marshal. What we don't know—
> Commonwealth: Objection, Your Honor.
> The Court: Sustained.
> N.T., 8/2/13, at 198–199.
>
> The document referenced by Appellant's counsel was one allegedly signed by Appellant in the presence of United States State

18

Department officials in Yemen. N.T., 8/1/13, at 36; Appellant's brief at 15–16. The document was not presented to the jury. *Id.*

Appellant's allegation relates to the following closing argument offered by the Commonwealth:

Commonwealth: You can lay a lot at the Commonwealth's feet that we're responsible for, for presenting the reasonable doubt. One thing I want to say to you right now that I cannot understand or accept and I will not accept the burden of is not presenting to you a statement from the defendant which counsel has mentioned several times you do not have. One man, thanks to the protection of the Constitution, and I'm not saying to make any conclusions about it because the Constitution protects it, but counsel cannot get up here and say, well, you haven't heard any statements from the defendant. Well, this defendant at any time could have come back to the Commonwealth and said I want to make a statement—
Defense: Objection.
The Court: Overruled.
Commonwealth:—I want to tell you why I fled to Yemen, I want to tell you what happened there, and he has failed to do so. The Constitution says you can't hold that against him, but counsel cannot argue to you that the Commonwealth has not presented a statement from the defendant when the defendant has not chosen to make one to you and tell you what he wants to say about that.
N.T., 8/2/13, at 232–233.
Appellant argues that the district attorney improperly referred to Appellant's post-arrest silence in her summation in a way that violated his constitutionally protected right against self-incrimination. Indeed, reference at trial to an accused's silence while in police custody is a violation of the constitutional privilege against self-incrimination. *Commonwealth v. Molina,* 104 A.3d 430, 446 (Pa.2014) (citations omitted).

As well-founded and valued as the privilege against self-incrimination may be, it is not without exception. Pertinent here is the exception recognized when counsel responds to a claim made by a criminal defendant or defendant's counsel at trial, commonly known as the exception for fair response. Our Supreme Court has acknowledged that, "where a prosecutor's reference to a defendant's silence is a fair response to a claim made by defendant or his counsel at trial, there is no violation of the Fifth Amendment privilege against self-incrimination." *Commonwealth v. Copenhefer,* 719 A.2d 242, 251 (Pa.1998) (citing *United States v. Robinson,* 485 U.S. 25, 32 (1988)). "The protective shield of the Fifth Amendment may not be converted into a sword that cuts back on an area of legitimate

19

inquiry and comment by the prosecutor on the relevant aspects of the defense case." *Id.* (citing *United States v. Hasting,* 461 U.S. 499 (1983)).

Appellant urges that argument made by counsel for the Appellee was not fair response and constituted harmful error. In reply, the Commonwealth posits that the comments were fair response to Appellant's counsel's reference to the absence of any statement from Appellant and also that any resulting prejudice was negated by the court's curative instructions to the jury. We agree with the Commonwealth."

> *Com. v. Dixon-Tildon,* No. 3438 EDA 2013, 2015 WL
> 7012585, at *2–4 (Pa. Super. Ct. June 16, 2015).*

The only difference between the issue raised by Appellant on direct appeal and Appellant's current version of this issue is that Appellant now couches this issue in terms of ineffective assistance of counsel. As a result, this court cannot ignore the prior analysis in conducting its own, hence its inclusion *supra.*

Insofar as this is a different issue, it should be noted that Appellant's claim that this is a mischaracterization of the evidence is very subjective. In closing, the Commonwealth indicated that Appellant never made a statement as to why he went to Yemen. Appellant counters that he did provide a statement to a federal marshal indicating that he was voluntarily returning to the United States, despite the fact he may possibly be facing criminal charges. Although Appellant made a statement about returning voluntarily, he did not address why he left, making the statement by the Commonwealth accurate and, ergo, not a mischaracterization.

Appellant failed to satisfy his burden in showing that counsel was ineffective for failing to move for a mistrial on this statement. Trial counsel objected to the Commonwealth's statement and appealed this issue. Appellant cannot now relitigate the same previously litigated issue by repackaging it as a new theory on the same claim. Even if this could be considered a unique issue that was not previously litigated, it is not a mischaracterization.

20

Therefore, Appellant's ineffective assistance of counsel claim with regard to prosecutorial misconduct during closing arguments is both previously litigated and meritless.

### d. THE JURY CHARGE WAS NOT TOLD TO ONLY CONSIDER THE COMMONWEALTH'S EVIDENCE.

Appellant alleges that trial counsel was ineffective for not objecting to what he characterized as a flawed jury instruction. Particularly, Appellant alleges that the trial court instructed the jury to only consider the Commonwealth's evidence. This is meritless. Not only does the trial record reflect that the trial court never instructed the jury to only consider Commonwealth evidence, but the charge Appellant objects to is the model jury instruction regarding reasonable doubt.

> "Appellant next asserts that trial counsel provided ineffective assistance of counsel because he failed 'to object to incorrect and/or deficient jury instructions.' Appellant's Brief at 12. He asserts that the 'trial court gave an inadequate and inaccurate instruction' by 'omit[ting] parts or adding words to the jury's instruction that thus chang[ed] the meaning of the jury instruction.' *Id.* Appellant fails to indicate the source of the predicate instruction from which the trial court omitted parts or to which the court added. Rather, he cherry-picks certain instructions that were given, and sets forth incomplete sentences and phrases that the court should have provided. *See id.* At 12-14. Appellant has not developed this claim so as to enable this Court to provide meaningful review. Accordingly, the challenge is waived."
>
> Commonwealth v. Cool, No. 1926 WDA 2016, 2017 WL 6545512, at *4 (Pa. Super. Ct. Dec. 22, 2017).

> "Even if the claim were not waived, we would conclude it is without merit. Our standard of review in assessing a trial court's jury instructions is as follows: '[W]hen evaluating the propriety of jury instructions, this Court will look to the instructions as a whole, and not simply isolated portions, to determine if the instructions were improper. We further note that, it is an unquestionable maxim of law in this Commonwealth that a trial court has broad discretion in phrasing its instructions, and may choose its own wording so long as the law is clearly, adequately, and accurately presented to the jury for its consideration. Only

21

where there is an abuse of discretion or an inaccurate statement of the law is there reversible error'." *Id.* at 5.

Initially, it is clear that the trial court did not abuse its discretion. Although the jury instruction provided by the trial court is not a verbatim reading of the model jury instruction due to the trial court omitting the word "Commonwealth", the instruction provided by the trial court did not materially change the burden of proof requirement.

It cannot be ignored that Appellant's issue presents a particularly interesting twist on arguing erroneous jury instructions. Appellant's argument is not that the trial court simply omitted words or phrases that fundamentally changed the meaning of the jury instruction in question. Rather, Appellant is arguing, for lack of a better explanation, that the use of the word "Commonwealth" before the word evidence prevented the jury from considering defense evidence and ergo prejudiced Appellant. This argument lacks merit because the jury instruction provided at trial omitted the word "Commonwealth" prior to the word evidence, meaning that the instruction could not be interpreted in a manner where the jury would only have considered the Commonwealth's evidence. For reference, the instruction in question is provided:

> "It is not the defendant's burden to prove that he is not guilty, nor to prove anything in his own defense. Instead, it is the Commonwealth that always has the burden of proving each and every element of the crimes charged and that the defendant is guilty of those crimes beyond a reasonable doubt. And I will give you those elements toward the end of this charge.
>
> If the evidence presented fails to meet the Commonwealth burden, then your verdict must be not guilty. On the other hand, if the evidence does prove beyond a reasonable doubt that the defendant is guilty of the crimes charged, then your verdict should be guilty."
> *N.T. August 5, 2013, page 16 lines 5-20.*

It must be noted that the model jury instruction for the presumption of innocence does include the word "Commonwealth" before the word evidence when discussing the evidence the

jury can consider. The only variation between the model jury instruction and the one used at the end of Appellant's trial is that the trial court omitted the word "Commonwealth" prior to references to the evidence. Appellant provided no case law to support his claim that somehow this affected the burden of proof instruction. This is a verbatim reading of the reasonable doubt instruction, with the omission of the word "Commonwealth" prior to the word evidence. The model instruction states the following:

> "It is not the defendant's burden to prove that [he] [she] is not guilty. Instead, it is the Commonwealth that always has the burden of proving each and every element of the crime charged and that the defendant is guilty of that crime beyond a reasonable doubt. The person accused of a crime is not required to present evidence or prove anything in his or her own defense [except with respect to the defense of *[type of defense]*, which I will discuss later]. If the **Commonwealth's** evidence fails to meet its burden, then your verdict must be not guilty. On the other hand, if the **Commonwealth's** evidence does prove beyond a reasonable doubt that the defendant is guilty, then your verdict should be guilty." [*emphasis added to omissions*]
> *7.01 PRESUMPTION OF INNOCENCE--BURDEN OF PROOF--REASONABLE DOUBT, Pa. SSJI (Crim), §7.01.*

Appellant's argument initially fails due to the fact that the jury instruction at the center of this particular issue was given in the manner Appellant wanted, namely in a manner that did not instruct the jury to solely consider the Commonwealth's evidence. Instead, the trial court instructed the jury to consider the evidence at trial, which would also encompass two witnesses who testified that Appellant did not flee to Yemen to avoid prosecution but rather to learn more about his faith. Such testimony would have only increased the burden on the Commonwealth to prove Appellant's guilt beyond a reasonable doubt as the instruction given would have permitted the jury to consider this testimony as an alternative reason as to why Appellant was in the Middle East.

Although the jury instruction provided by the trial court is not a verbatim reading of the model jury instruction due to the trial court omitting the word "Commonwealth", the instruction

provided by the trial court did not materially change the burden of proof requirement. Even reasonable doubt instructions adhere to the standard that the words added or omitted to the instruction must materially alter the instruction in order to be considered reversible error, as seen in <u>Com. v. Roane</u>.

> "When reviewing jury instructions, we are governed by the following standard: Our standard of review in assessing a trial court's jury instructions is as follows: [W]hen evaluating the propriety of jury instructions, this Court will look to the instructions as a whole, and not simply isolated portions, to determine if the instructions were improper. We further note that, it is an unquestionable maxim of law in this Commonwealth that a trial court has broad discretion in phrasing its instructions, and may choose its own wording so long as the law is clearly, adequately, and accurately presented to the jury for its consideration. Only where there is an abuse of discretion or an inaccurate statement of the law is there reversible error."
> *Commonweath v. Roane*, 142 A.3d 79, 95 (Pa.Super. 2016).

Appellant has failed to provide any evidence that the trial court's instruction diluted the Commonwealth's burden of proof. As the given instruction also invited the jury to consider Appellant witnesses' testimony, then at the very least the instruction provided by the trial court would have imposed the same burden on the Commonwealth to prove Appellant's guilt beyond a reasonable doubt.[6] Consequently, Appellant cannot argue that the trial court's variation of this instruction prejudiced him, nor that the court abused its discretion in the phrasing of its instruction. Appellant has failed to satisfy his burden of showing that this was a materially flawed instruction that somehow changed the definition of reasonable doubt. As a result, Appellant's claim that counsel was ineffective for failing to object to the reasonable doubt instruction lacks merit.

---

[6] Instructing the jury to consider the evidence in such a manner that provided an alternative reason for Appellant's trip to Yemen would likely increase the burden on the Commonwealth to prove Appellant's guilt beyond a reasonable doubt, a burden that would help Appellant, not hurt Appellant.

24

Therefore, Appellant's ineffective assistance of counsel claim with regard to any alleged prosecutorial misconduct or flawed jury instructions is meritless.

### e. TRIAL COUNSEL COULD NOT LITIGATE A ROSS/SPEEDY TRIAL MOTION WHEN APPELLANT HIMSELF WAS THE CAUSE OF MORE THAN FIVE YEARS OF DELAY IN THIS CASE.

Appellant alleges that trial counsel was ineffective for failing to litigate a Ross/Speedy Trial Motion. In Pennsylvania, the right to a speedy trial is protected by various legal authorities, such as Rule 600, the Pennsylvania Supreme Court Case of Commonwealth v. Bradford, and the United States Supreme Court Case of Barker v. Wingo. Appellant did not provide an analysis based upon Rule 600 and instead focuses upon Barker v. Wingo, Ross, and DeBlase. Of particular note, Appellant does not provide a Rule 600 analysis, likely due to the fact that Appellant himself is the cause of more than five years' worth of delay in bringing his case to trial, and that Barker, upon which Appellant relies for his own analysis, discusses how time delay is a common defense tactic and also how deprivation of the right to speedy trial does not per se prejudice the accused ability to defend himself.

"Delay is not an uncommon defense tactic. As the time between the commission of the crime and trial lengthens, witnesses may become unavailable or their memories may fade. If the witnesses support the prosecution, its case will be weakened, sometimes seriously so. And it is the prosecution which carries the burden of proof. Thus, unlike the right to counsel or the right to be free from compelled self-incrimination, deprivation of the right to speedy trial does not per se prejudice the accused's ability to defend himself." Barker v. Wingo, 407 U.S. 514, 521 (1972).

"[T]he key issue in the case is whether the Commonwealth acted with due diligence, pursuant to Rule 600(G), when it relied upon the District Justice's compliance with the Rules of Criminal Procedure. Rule 600(G) provides, 'If the court, upon hearing, shall determine that the

25

Commonwealth exercised due diligence and that the circumstances occasioning the postponement were beyond the control of the Commonwealth, the motion to dismiss shall be denied and the case shall be listed for trial on a date certain.' The court further recognized while 'due diligence does not demand perfection, it does require the Commonwealth to put forth a reasonable effort'." Commonwealth v. Bradford, 46 A.3d 693, 697 (Pa. 2012).

"In *Barker,* the United States Supreme Court declined to exercise legislative or rulemaking authority and instead adopted a balancing test to determine whether a defendant's speedy trial rights had been violated. The four part test required consideration of the '[l]ength of delay, the reason for the delay, the defendant's assertion of his right, and prejudice to the defendant.' *Barker,* 407 U.S. at 530, 92 S.Ct. 2182." *Id.* at 700–01.

"[O]nly periods of delay caused by the defendant shall be excluded from the computation of the length of time of any pretrial incarceration. Any other periods of delay shall be included in the computation." Pa.R.Crim.P. 600(C)(2).

"The *Barker* Court identified four factors to be considered in determining a Sixth Amendment speedy trial violation: (1) length of delay; (2) reason for delay; (3) defendant's assertion of his rights; and (4) prejudice to the defendant." Commonwealth v. Terfinko, 474 A.2d 275, 278 (Pa. 1984). Although finding "no constitutional basis for holding that the speedy trial rights can be quantified into a specified number of days or months," the United States Supreme Court held that "the individual states are free to prescribe a reasonable period consistent with constitutional standards." Bradford, 46 A.3d at 701, quoting Barker, *supra.*

26

"[W]here the defendant 'voluntarily absented himself from his scheduled trial,' such 'voluntary absence from a day set for trial within Rule 1100 is a waiver of that rule'."[7] Commonwealth v. Williams, 958 A.2d 522, 525 (Pa.Super. 2008).

"One's voluntary absence from a day set for trial within Rule 1100 is a *waiver of that rule*. Therefore, his trial thereafter is, at the reasonable convenience of the court and the prosecuting authorities. Rule 1100 is a procedural rule designed to give reasonable parameters for the commencement of trial." Commonwealth v. Brock, 61 A.3d 1015, 1020 (Pa. 2013); *see also* Commonwealth v. Barbour, 189 A.3d 944, 949 (Pa. 2018).

In response to Barker, and because of the "inherent vagueness" resulting from the Barker balancing test, the Pennsylvania Supreme Court adopted Pa.R.Crim.P. 1100, later renumbered Rule 600, "to establish a definite period of time for a speedy trial violation." Bradford, 46 A.3d at 701 quoting Commonwealth v. Whitaker, 359 A.2d 174, 176 (Pa. 1976) ("the balancing test announced in Barker provides only the minimum standards guaranteed by the Sixth and Fourteenth Amendments, and … such minimum standards are not adequate to provide Pennsylvania criminal defendants the protection guaranteed by the constitution of this Commonwealth").

"[A] speedy trial analysis [thus] mandates a two-step inquiry: (1) whether the delay violated Pennsylvania Rule of Criminal Procedure 1100 [now Rule 600]; and, if not, then (2) whether the delay violated the defendant's right to a speedy trial guaranteed by the Sixth Amendment to the United States Constitution and by Article I, Section 9 of the Pennsylvania Constitution." Commonwealth v. DeBlase, 665 A.2d 427, 431 (Pa. 1995) (emphasis added) citing Jones v. Commonwealth, 434 A.2d 1197, 1201 (Pa. 1981) (although Rule 600 (formerly Rule 1100) was designed to implement the constitutional rights of an accused to a speedy trial, the

---

[7] Rule 1100 has since been replaced by Rule 600.

27

constitutional guarantees to a speedy trial continue to provide a separate basis for asserting a claim of undue delay in appropriate cases, and in analyzing such constitutional claims, we apply the four part <u>Barker</u> test); <u>Commonwealth v. Preston</u>, 904 A.2d 1, 10 (Pa.Super. 2006) (while Rule 600 was designed to implement the speedy trial rights provided by the federal and state constitutions, the constitutional provisions themselves continue to provide a separate and broader basis for asserting a claim of undue delay in appropriate cases under the balancing test set forth in <u>Barker</u>.

Pursuant to the two-step analysis enunciated in <u>DeBlase</u>, *supra*, we must consider whether the delay violated Rule 600, and if not, we may proceed to the four-part constitutional analysis set forth in <u>Barker</u>.

Appellant failed to discuss Rule 600, presumably because Appellant would then be required to address the time during which his whereabouts were unknown and could not be determined through the exercise of due diligence. The fugitive squad was looking for Appellant and was unable to locate him because he had left the country and went to Yemen until which time Appellant was found, arrested, and extradited back to Philadelphia. Upon his return, Appellant was brought to trial a little over a year later. Framing it as a Ross/Speedy Trial Motion, requires analysis of the four part factorial test announced in <u>Barker</u>. Appellant hopes to emphasize the length of the delay and the prejudice. However, it discounts the fact that the vast majority of the delay is completely Appellant's responsibility which would result in Appellant's trial being timely under Rule 600. Between the time the arrest warrant was issued and the time Appellant arrived back to the United States, Appellant was in a foreign country and was unable to be located for years. Upon being returned to the United States, Appellant was brought to trial in a very timely manner. Appellant's claim that trial counsel was ineffective for not arguing a Ross/Speedy Trial Motion lacks merit because almost the entire delay was completely due to Appellant's whereabouts being

28

unknown and would have failed as per applicable Pennsylvania law, including but not limited to Barker, Bradford, Williams, Brock, Barbour, and Rule 600(C)(2).

Therefore, Appellant's ineffective assistance of counsel claim with regard to the Ross/Speedy Trial Motion is meritless.

### f. APPELLANT WAS NOT PREJUDICED BY THE 'VIOLATION OF THE UNIFORM FIREARMS ACT' CHARGE HAVING BEEN CONSIDERED BY THE JURY.

Appellant alleges that counsel was ineffective for failing to file a Motion for Judgment of Acquittal for the Violation of the Uniform Firearms Act charge ("VUFA"). The VUFA charge was based upon the length of the barrel. Immediately after the verdict, while discussing the scheduling of sentencing, trial counsel moved to have this charged dismissed and the trial court did dismiss said VUFA charge. Appellant contends that had this motion been made prior to jury instructions, it would have affected the Commonwealth's closing and given the jurors one less charge to discuss. This theory is misplaced.

First, in terms of arguable merit, the law does not support the idea that the evidence was insufficient to support the VUFA charge considering the cause of death of the victim. However, this charge was dismissed and as a result Appellant is not serving a sentence for this charge.

The second prong of the Pierce test is whether there was a reasonable basis for the action or inaction. Had trial counsel moved for acquittal, the Commonwealth would likely have asked to reopen the case to present evidence of the barrel length. The strategic basis for not wanting the jury to hear even more about the murder weapon is rather obvious. It is more likely than not that this was just an oversight, as introducing evidence of the length of the barrel would likely have been the subject of a stipulation.

29

The final prong of <u>Pierce</u> is prejudice. Appellant cannot establish this part of the <u>Pierce</u> test. The charge was dismissed. Appellant argued that he suffered prejudice due to the fact that the charge was still on the verdict slip and the Commonwealth discussed the firearm twenty-six times during their closing argument. However, this court is not convinced that the firearm would have been discussed any less has the VUFA charged been dismissed. The case revolved around the identity of the shooter. The length of the barrel of the firearm did not affect Appellant's conviction. Had Appellant moved to have the charge dismissed after the Commonwealth closed its case, the Commonwealth would have responded by requesting permission to reopen the Commonwealth's case to provide brief testimony of the length of the firearm's barrel. As stated *supra*, this would have likely been entered via stipulation and would have had no impact on the outcome of the trial.

Therefore, Appellant's ineffective assistance of counsel claim with regard to the VUFA charge is meritless.

### g. TRIAL COUNSEL REQUESTED A *KLOIBER* CHARGE FOR BOTH WITNESSES.

Appellant alleges that trial counsel was ineffective for not requesting a Kloiber charge in regard to Mark Jordan and for not objecting to the charge being modified in regard to Denise Chandler. This issue is meritless. Trial counsel requested a Kloiber charge regarding both witnesses.

"[W]here the witness is not in a position to clearly observe the assailant, or he is not positive as to identity, or his positive statements as to identity are weakened by qualification or by failure to identify defendant on one or more prior occasions, the accuracy of the identification is so doubtful that the Court should warn the jury that the testimony as to identity must be received with caution." <u>Commonwealth v. Kloiber</u>, 106 A.2d 820, 826–27 (Pa. 1954). "[A]n undeveloped argument, which fails to meaningfully discuss and apply the standard governing the review of

ineffectiveness claims, simply does not satisfy Appellant's burden of establishing that he is entitled to any relief." Commonwealth v. Rivera, 816 A.2d 282, 287 (Pa.Super. 2003).

It is well-established that where there is evidence of record upon which a jury could find that the opportunity for positive identification was dubious, a defendant is entitled to a Kloiber instruction. Commonwealth v. McKnight, 454 A.2d 1 (Pa.Super. 1982). This is not to be confused with situations in which there was a good opportunity to make a positive identification but the witness failed to make the positive identification based upon fear of the defendant. Commonwealth v. Lee, 585 A.2d 1084, 1087 (Pa.Super. 1991) (finding Kloiber instruction inappropriate where fear of identifying defendant cannot be equated to failure to make identification).

In order to prove ineffective assistance of counsel, Appellant must first prove that his claim is of arguable merit. In order to demonstrate arguable merit here, Appellant must prove he was entitled to a Kloiber instruction. The Commonwealth argued that because no in-court identification occurred, a Kloiber instruction was inappropriate. The interaction between Kloiber and cases where no in-court identification occurred, requiring the identification to be introduced via Brady/Lively was not addressed until Sanders in 2012. The Sanders Court did not agree with the broad assertion that Brady/Lively should only apply in situations where in-court identifications occurred, they denied relief and indicated that "unlike the typical Kloiber situation, where there is a damaging in-court identification of the accused, the same type of concerns are not present where a witness declines to identify the defendant in-court." Commonwealth v. Sanders, 42 A.3d 325 (Pa.Super. 2012). The current case also appears to be addressed in Lee, since the failure to make a positive identification at trial appears to be due to fear of Appellant as opposed to factors related to the inability to make the observation itself. Even if it may remain an open question whether Kloiber is *per se* impermissible when no in-court identification occurs, case law certainly does not

31

support the idea that the trial court abused its discretion by not giving said Kloiber instruction.

It is clear that trial counsel requested a Kloiber instruction related to both witnesses and, based upon the view that it did not apply, the trial court rejected the request for a Kloiber instruction related to Jordan. *N.T. August 05, 2013, page 3 line 2 through page 10 line 15, page 39 lines 5-17.* In regard to Chandler, a modified Kloiber charge was provided by the court, which included certain modifications requested by Appellant. *N.T. August 05, 2013, page 39 line 18 through page 40 line 3.* Appellant failed to prove the first prong of Pierce, since Appellant cannot satisfy his burden of showing that a Kloiber charge was warranted for Jordan or that the modified Kloiber charge related to Chandler was insufficient and thus fails to satisfy his burden as defined by Rivera.

Therefore, Appellant's ineffective assistance of counsel claim with regard to the Kloiber charge is meritless.

### h. THERE WAS NO CUMULATIVE ERROR.

Appellant alleges that he is entitled to relief based upon cumulative error. This issue is meritless. Pennsylvania does not grant relief on the number of claims raised on appeal but rather for the merit of those claims.

"[N]o number of claims that have been denied because of lack of merit can collectively warrant relief." Commonwealth v. Spotz, 47 A.3d 63, 129 (Pa. 2012).

In order for Appellant to be able to allege that he was prejudiced due to cumulative errors, Appellant must first prove that more than one error occurred in his matter. Appellant cannot meet this burden.

## CONCLUSION

For the foregoing reasons, this court properly denied Appellant's PCRA Petition as being meritless. Accordingly, this court's decision should be affirmed.

BY THE COURT:

_____

Brandeis-Roman, J.